In the Matter of the Estate of Margaret Guinane, Deceased.
Francis Anderson, Executor of the Estate of Margaret Guinane, Deceased, Petitioner Below, Appellant, v. Ellen Ruth Quinn, a Minor, etc., et al., Respondents Below, Jimmy Idell and Katy Idell by Casimir J. Mikol, Guardian ad Litem, Appellees.

Gen. No. 50,396.

First District, First Division.

December 13, 1965.

193

George V. O'Connell and James F. Lyons, of Chicago, for appellant.

Bernard Mcdevitt, of Chicago, for appellees.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court.

The Probate Division of the Circuit Court admitted to probate the will of Margaret F. Guinane, deceased, dated November 27, 1959, and codicil dated September 24, 1964. The executrix of the estate appeals from part of that order. It is her contention that the court erred in allowing "the purported codicil" to be admitted to probate.

The will executed in 1959 disposed of certain furniture, bedding, linens and personalty to specific legatees and then directed the executrix to sell all the remaining assets and divide the same by percentages to numerous persons and charities. Of the twelve bequests only one was made to a relative—a nephew.

The facts and circumstances relating to the execution of the document, referred to as the codicil, are as follows: On September 24, 1964, decedent entered a hospital for surgery. She was prepared for the operation and tubes were inserted in her mouth, one leading to the stomach, the other to her bowel. Judy Claus, a private nurse on the case, reported for duty at about 3:00 p. m. and said the decedent was in bed in a semi-Fowler's * position— on her back and her body was at a 45-degree angle. Mrs. Idell, mother of Jimmy and Katy Idell, who were named in the codicil, was in the room at the time. Shortly thereafter, decedent indicated and made motions which Claus

---

* Fowler's position: A semierect position obtained by raising the head of the bed and by pillows. (Gould's Medical Dictionary.)

195

"gathered" to be a request for paper and pencil. Mrs. Idell left and returned with paper and pencil. Decedent then wrote the following:

9/25/64

Our little secret.
I want $15,000 to be
given to Jimmy Idel
and Katy Idell
to help in educationing
them

_____

Aunt Margaret

Get a couple
of witnesses to
sign. M.

It was written using two pens and a pencil. When the first pen failed to function properly, Mrs. Idell had Claus give decedent a red pen and when that failed to operate fully, decedent finished with a pencil. Decedent handed the paper to Mrs. Idell who gave it to Claus. She said that although decedent did not ask her to sign, decedent "wrote down here about a couple of witnesses and I was then asked by Mrs. Idell to sign it, which I did." Claus was in the room at all times, had seen the decedent sign and signed in decedent's presence. She believed decedent was of sound mind and disposing memory at the time.

Kenneth Bridge, a registered nurse, in charge of the "shift" at the hospital, testified he knew decedent by the title of "Aunt Margaret." On the day in question, as he came down the hall, Mrs. Idell called him saying, "Aunt Margaret wants this piece of paper signed." He read the document. Present were Judy Claus, Mrs. Idell and the decedent. He signed it "at the request of Mrs. Idell, after reading the last paragraph of the piece of paper here." He signed on a table that was half way in

the doorway of the room. It was from 12 to 15 feet from decedent's bed. He could see her and she could have seen him. ". . . She could have seen me sign, in the position I was standing. She could have seen me sign it." He believed her to be of sound mind and disposing memory. Decedent died at the hospital on October 6, 1964.*

It is the contention of the executrix that the document admitted to probate as testatrix's codicil was without words of devise or bequest and did not manifest an intent to make a testamentary disposition of property; that the name signed to it was not the full name of the decedent; that the document was not witnessed in her presence by two or more witnesses; and the execution by deceased was not witnessed by two or more witnesses as "was mandatory under the statute relating to wills."

■■ Courts entertain liberal views as to the form and contents of wills and codicils and hold that an instrument executed with a testamentary purpose and the requisite formalities may operate as a will or codicil. Any writing, however informal it may be, made with the express intent of giving posthumous destination to the maker's property, if executed in accordance with the statutory requirements, will be a good testamentary disposition. Austin v. First Trust & Savings Bank, 343 Ill 406, 413, 175 NE 554 (1931).

■ The instrument before us clearly expresses a desire of the decedent to give to certain persons a definite sum of money and was not in conflict with any of the provisions of her will. After personalty was specifically bequeathed the remainder was to be reduced to cash and distributed percentagewise. The later instrument would only add an additional $15,000 legacy to Jimmy and Katy

---

* Although the document bears the date 9/25/64, all parties agree it was executed on 9/24/64 and no issue was raised as to the date as it would have been immaterial anyway. (Conway v. Conway, 14 Ill2d 461, 468, 153 NE2d 11.)

Idell without any inconsistency with the terms of the will. The circumstances of the execution and the substance thereof, we believe, clearly indicated an intent to make a testamentary disposition by decedent of some of her property without affecting the validity of her prior will. The intent of the decedent, not militating against any prior actions, can and should be given effect if otherwise made in compliance with statutory provisions regarding the execution of wills and codicils.

■■ Passing to the question of whether the instrument was executed with the requisite formalities, we note that no issue was raised as to whether the will and the purported codicil were signed by the decedent, Margaret F. Guinane. The complaint is that she did not use her full name in the latter document. It is well established that, in cases of this kind, the name used is not important as long as the person to whom it applies is identified as being the one having authority to act. In applying this principle, In re Will of Westerman, 401 Ill 489, 82 NE2d 474 (1948) on pp 492, 493, held that ". . . it is not necessarily the name used by the testator in the execution of his will, but it is the person to whom that name applies, that determines whose will it is." The use of the name "Aunt Margaret" was sufficient and effective.

■■ We find no merit to the contention that the document was not witnessed in decedent's presence, as required by statute (Ill Rev Stats 1963, c 3, § 43). Judy Claus was present at all times, when the document was written and when she signed. Kenneth Bridge signed on a table in the doorway of the decedent's room some 12 to 15 feet from her bed where she was propped up. The decedent had an opportunity to see for herself, without a change of position, that Bridge was signing his name to the instrument in accordance with her written request for witnesses. The attestation which the law requires is that the testator have the opportunity of seeing the very act of attestation. "All authorities declare that the

198

object of the law is to prevent fraud and imposition upon the testator or the substitution of a surreptitious will, and to effect that object it is necessary that the testator shall be able to see and know that the witnesses have affixed their names to the paper which he has signed and acknowledged as his will." Walker v. Walker, 342 Ill 376, 383, 174 NE 541 (1931). We believe the statutory and legal formalities required were satisfied in this regard.

■ In considering the executrix's further contention that the execution of the instrument by decedent was not witnessed by two or more witnesses, we find that Sec 69 of the Probate Act (Ill Rev Stats 1963, c 3, § 69) providing for the admission of a will or codicil to probate, requires that each of two or more witnesses to the instrument testify *"that he was present and saw the testator . . . sign the will in the presence of the witness or that the testator acknowledged it to the witness as his act."* Judy Claus testified she was present and saw the decedent sign the codicil. Kenneth Bridge testified that he read the instrument in the presence of the decedent and signed as a witness after seeing the direction therein to get a couple of witnesses to sign. "[I]t is not indispensable to a proper attestation that the testator sign in the presence of the witnesses; nor is it essential that the witnesses see the signature of the testator upon the face of the will, or even that they know the instrument they are witnessing to be a will. The statutory requirement is satisfied if the testator acknowledges the execution of the will." (Authorities cited.) Conway v. Conway, 14 Ill2d 461, 468, 153 NE2d 11 (1958).

In the instant case, the facts and circumstances are more evident of acknowledgement than in Conway. The witness Bridge was in decedent's presence, she could have seen him sign, the instrument contained words of disposition, her signature was thereon, together with her initial after a direction to get witnesses to sign. "Any

199

act, sign or gesture will suffice which indicates an acknowledgement of the instrument with unmistakable certainty. It is enough if the testator acknowledges to the witnesses, either by words or acts, that the instrument in question is his act and deed." Conway v. Conway, p 468.

 The executrix also contends that undue influence could be presumed from the circumstances and facts indicating Mrs. Idell's relationship to the recipients and her participation in the execution of the codicil. Section 69 provides that the instrument not be admitted to probate if there is proof of fraud, forgery, compulsion or other improper conduct which, in the opinion of the court, is deemed sufficient to invalidate or destroy it. The requirements for the admission of a will or codicil to probate are set forth in the statute and when the statutory requirements are complied with no others can be prescribed. Shepherd v. Yokum, 323 Ill 328, 332, 154 NE 156 (1926). As held in Shepherd, proof that the testator was not under any undue influence is not essential to a prima facie case, nor is undue influence one of the enumerated grounds of the proviso which will warrant a refusal to admit a will to probate. Undue influence is a ground for contesting a will or codicil but not for resisting its probate. 323 Ill 328, 338.

We believe the formalities and requirements of the statute were sufficiently complied with to admit the codicil to probate. That part of the order admitting it is affirmed.

Affirmed.

BURMAN, P. J. and MURPHY, J., concur.