*In re* Estate of Diana Francoeur, Deceased—(Dulcenie Mercier *et al.*, Petitioners-Appellants, *v.* Eva L. Minor *et al.*, Respondents-Appellees.)

(No. 72-125; ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓)

Third District—November 29, 1972.

Maynard R. Bissonnette, of Kankakee, for appellants.

John F. Michela, of Kankakee, for appellees.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:
This is an appeal from an order of the Circuit Court of Kankakee County denying a motion to vacate and petition to admit a second will.

An order had previously been entered admitting the first will and appointing co-executors.

The record in the case indicates that the testatrix died on July 23, 1971, at the age of 91 years. On August 21, 1971, a petition to probate a will dated November 23, 1965, was filed by Arbella LaReau, a niece who was named as co-executor in that will. The will had been drafted for the testatrix by an attorney who had represented her for many years. The attorney was also named as co-executor. Under the provisions of that will, there were bequests of money to individuals, and bequests of money for masses were also made to two churches. The co-executors were directed to convert all property into cash, which was to be divided equally between the children of the deceased brothers and sisters who survived testatrix, after payment of the specific bequests, funeral expenses, debts, taxes, and costs of administration. There were 22 nieces and nephews who survived the testatrix. The estate consisted entirely of personal property. Notice of the hearing on the petition to probate the first will was given to all heirs and legatees, including Dulcenie Mercier and Parmille R. Hubert, who are the petitioners-appellants in this case. These petitioners were also present at the hearing on September 9, 1971, at which time the 1965 will was admitted to probate without objection and letters testamentary were issued.

On October 5, 1971, Parmille Hubert, filed a petition as an heir and legatee, in which she prayed that the co-executors be directed to deliver to her a savings account passbook allegedly evidencing funds belonging to Parmille Hubert and to the decedent, as joint tenants. A week later the co-executors filed a petition alleging belief that Parmille had certain moneys and stock of the decedent in her possession and had knowledge relating to other property of the decedent. The co-executors prayed that Parmille be directed to appear and answer under oath questions relating to such matters. Prior to a hearing on these petitions, on December 9, 1971, appellants filed a motion to vacate the order admitting the November 23, 1965, will to probate, and petitioned the court to admit to probate a purported will of decedent dated October 9, 1970. There was attached to the motion a document in the handwriting of Parmille R. Hubert which was in the words and form as follows:

"Oct 9th 1970.

After my death,

To Leah Crabbe, I give my complete bedroom set and little rocker.

To Lorena Lareau, I give her my cocktail table by the fireplace and davenport.

To Dulcenie Mercier I give my gateleg table and one needle-work straight chair & one large chair.

To Parmille Hubert I give the desk & one needlepoint straight chair. Painting over davenport, small table by the front door, and the white statue on the pedestal & all silverware, & white rug.

The rest of my personal property to be divided between Parmille Hubert, Leah Crabbe, Dulcenie Mercier, and Lorena Lareau.

/S/ Diana Francoeur

/S/ Beulah Fortier
/S/ Lillian Santschi"

At the hearing on the motion and petition to admit the purported will of the decedent dated October 9, 1970, Parmille Hubert testified that the document of October 9, 1970, was intended to be a will; that her aunt had not wanted an attorney to prepare it because of the expense; and that she, Parmille, had written down what her aunt told her to write. It was shown that a few days prior thereto, presumably at her aunt's request, Parmille had gone to a bank and had removed from her aunt's safety deposit box a will, described by Parmille as an "old will" bearing a date in the year 1954. The will of November 23, 1965, which expressly revoked all prior wills, was not in the safety deposit box. After the drafting and execution of the October 9, 1970 document, Parmille stated, she kept the original at her aunt's request, but had a photocopy of it made which she placed with the 1954 will and returned both to the safety deposit box. In her testimony, the witness Parmille also stated that her aunt was bedfast on October 9, 1970, at the time the document was written and executed in her aunt's bedroom, and that Beulah Fortier and Lillian Santschi were present when her aunt dictated the document and signed it. It appears that Beulah Fortier was a lifelong friend and neighbor of Parmille who occasionally visited the aunt, but who was present on October 9, 1970, at the request of Parmille for the specific purpose of witnessing a document. Lillian Santschi, who was 82 years old, lived in the home of the aunt and attended her as a practical nurse. Neither of the witnesses were related to the aunt.

Both witnesses, Fortier and Santschi, testified in substance that they where present when Parmille wrote the document at the aunt's direction; that the aunt read the document after it was written and made statements manifesting her intent and understanding that it was a will; and that the aunt signed the document in their presence and they signed the document in the presence of the aunt at her request and in the presence of each other. With respect to testamentary capacity, both testified that the aunt, although bedfast, was mentally alert and of sound mind and was aware of what she was doing. Mrs. Santschi testified that up until two months

before her death in July 1971, the aunt had signed the paychecks given to her for her services.

The only other witness at the hearing was the attorney—co-executor, who testified in support of the motion by the co-executors to strike the motion and petition of appellants. The attorney testified that she met Parmille Hubert at the funeral home after the aunt's death and was told by Parmille that the decedent wanted to give her furniture away; that she, Parmille, fixed up a paper telling where the furniture was to go, had caused it to be signed and witnessed and placed a copy of it in her aunt's safety deposit box. Based upon this conversation, the attorney stated that she found the paper in the box and did not consider it to be a will and that she had intended to apply to the court for directions, when the time came, for disposition of the furniture.

At the conclusion of the evidence, the trial court denied the motion and petition of appellants giving as reasons therefore that the document of October 9, 1970, contained no express provision that it was a will; that it did not in express terms revoke the will of November 23, 1965; and that the evidence offered by appellants was not of such clear and convincing character as to reflect an intention of the testatrix which would justify revocation of the order admitting the 1965 will to probate. In light of the circumstances surrounding the drafting and execution of the document of October 9, 1970, the reluctance of the trial court to grant the motion and petition of appellants is readily understandable. On the record presented, however, which brings before us no issues of fraud or undue influence such as could or may arise in the proceeding to contest the document, it is our opinion that the trial court erred. On the basis of the evidence, we feel that the document should have been admitted to probate as a codicil to the will of November 23, 1965. The document of October 9, 1970, should have been deemed to have revoked the will of November 23, 1965, only to the extent that it made a different testamentary disposition of the decedents furniture or household goods.

■■ A will does not require a particular form or use of particular words, and any writing, however informal, made with the express intent of giving a posthumous disposition of the testator's property, and executed in accordance with statutory requirements, is a good testamentary disposition. (*Austin v. First Trust and Savings Bank*, 343 Ill. 406; *Sweeney v. Trombley*, 224 Ill.App. 562.) Similarly, as stated in 36 I.L.P. Wills, ch. 3, § 61, p. 167:

> "Courts entertain liberal views as to the form and contents of codicils, and hold that an instrument executed with a testamentary purpose and requisite formalities ·may operate as a codicil, although it is partly or wholly in the form of a letter, power of

attorney, deed, or any other instrument in writing." See also: *In re Estate of Guinane,* 65 Ill.App.2d 193.

■■ It is equally well established that the plain provisions of a will are not taken away or modified by doubtful expressions in a codicil, inasmuch as a codicil does not supersede a will, and that a codicil revokes a will only to the extent absolutely necessary to give effect to the provisions of the codicil which are not repugnant to or inconsistent with those of the will. *Jackman v. Kasper,* 393 Ill. 496; *In re Estate of Reeve,* 393 Ill. 272; *Clark v. Todd,* 310 Ill. 361.

■■ It is apparent to us that the document of October 9, 1970, was effective as a testamentary disposition. The words "after my death" clearly indicate a testamentary purpose, and the evidence presented permits no finding other than one that it was executed with the requisite formalities. The critical question, however, is whether the testatrix intended to revoke her will of November 23, 1965, in its entirety, or whether she intended only to alter its provisions. Since the decision in *Lasier v. Wright,* 304 Ill. 130, it has been the established rule in this State, that when a testator makes a will absolutely inconsistent with all other wills and declares it to be his last will and testament, such act of necessity amounts to a declaration that all other wills are revoked. On the basis of this rule, appellants contend in this court that provisions of the document of October 9, 1970, are so completely inconsistent with the provisions of the prior will that the testator necessarily revoked it. More particularly, *it is* contended that the two documents are inconsistent because the October 9, 1970, document left all the decedent's property to four nieces, whereas the 22 nieces and nephews would have taken under the will of November 23, 1965.

■■ While the document of October 9, 1970, did not express that it was the "last will" of the testatrix, as the rule in *Lasier v. Wright,* 304 Ill. 130, contemplates, we conclude that the substance of the document, as well as the circumstances surrounding its execution, clearly indicate an intent on the part of the decedent to make a testamentary disposition of some of her property without affecting the validity of her prior will. We conclude that the document of October 9, 1970, was intended to be a codicil and to operate as a revocation of her prior will only to the extent that it provided a different disposition of decedent's furniture and household goods.

In summary, the will of November 23, 1965, made certain cash bequests to two churches, part of which were for masses to be said for the repose of decedent's soul, and then directed that all property of the testatrix be converted into cash and the funds divided among the decedent's nieces and nephews who survive her. The first four articles or paragraphs of the document of October 9, 1970, made bequests of specific

items of furniture and household goods to specific persons. It is obvious that these additional bequests were neither inconsistent with the prior will nor indicative of intent to entirely revoke it. (*cf. In re Estate of Guinane,* 65 Ill.App.2d 193.) If this construction were not true, then no will would ever survive a subsequently executed codicil which added a specific bequest before a residuary clause, unless an express cautionary clause to such effect were incorporated therein.

We see no inconsistency which should result in a revocation created by the last article or paragraph of the October 9, 1970, document which provided:

> "The rest of my personal property to be divided between Parmille Hubert, Leah Crabbe, Dulcenie Mercier, and Lorena Lareau."

There was uncontradicted and undenied testimony that Parmille, the scrivener of the document, had stated that the single purpose of the testatrix and the document was to dispose of testatrix's furniture and household goods. Based upon this testimony and the form of the document itself, it is evident that the testatrix did not use the words "personal property" in either a legal or generic sense, but that she had specific reference to the "rest" of her furniture and household goods remaining after the specific bequests made in the first four articles or paragraphs. We think it is also significant that the document was prepared by a person who could not be expected to know or explain to the testatrix the legal effect and meaning of the words. In support of the conclusion that the 91-year-old testatrix did not intend by the document to revoke the prior will was testimony that she was a devout Catholic. As such, it is presumed that she would not have revoked the gifts of money for masses to be said for the repose of her soul, unless she clearly so stated.

■■ In the argument in support of the trial court's order, the co-executors contend that the order was proper because the motion and petition of appellants constituted a collateral attack on the order admitting the will of November 23, 1965, to probate. We do not agree that this point is well taken. As stated by the court in *Crooker v. McArdle,* 332 Ill. 27, 30:

> "If by mistake or fraud a will has been admitted to probate and it is ascertained that the testator in his lifetime has executed a subsequent will revoking the first, the county or probate court which has jurisdiction of the probate of wills may, upon petition in a proper case, admit the subsequent will to probate and revoke the probate of the earlier will. *Conzet v. Hibben,* 272 Ill. 508."

As may be seen from *Abdill v. Abdill,* 295 Ill. 40, the same procedure applies where a codicil to a will is discovered after the admission of the will to probate.

574

It is also claimed by appellees, that appellants are estopped to have the document of October 9, 1970, probate because appellants knew of its existence and yet permitted the will of November 23, 1965, to be admitted to probate without objection. (See: *Conzet v. Hibben*, 272 Ill. 508.) The record in this case, however, does not permit the doctrine of estoppel to be applied. Dulcenie Mercier testified, without contradiction, that she did not know of the existence of the document when the will was admitted to probate. It is also apparent from the testimony of Parmille Hubert and the attorney—co-executor of the 1965 will, that Parmille, while having knowledge of the document, relied upon the representation of the co-executor that it would be presented to the court.

For the reasons stated, therefore, the order of the circuit court of Kankakee County is affirmed insofar as it denied the motion of appellants to vacate the order admitting the will of November 23, 1965 to probate, but the order is reversed insofar as it denied the petition of appellants to admit the document of October 9, 1970, to probate, and the cause is remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded with directions.

SCOTT and DIXON, JJ., concur.