J. L. BROWN, Ex'r of the Last Will and Testament of Zathoe Hauter, Deceased, Respondent-Appellant, *v.* ETTA MAE PETERS, Petitioner-Appellee.

Third District   No. 75-349

Opinion filed July 9, 1976.

Trimble and Trimble, of Princeton (Matthew Maloney, of counsel), for appellant.

Johnson, Russell & Martin, of Princeton (Robert Russell, of counsel), for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

J. L. Brown, executor of the last will and testament of Zathoe Hauter, appeals from an order of the Circuit Court of Bureau County admitting a certain document to probate as the second codicil to the last will and testament of the decedent. As noted in the opinion later, the second codicil purports to make a specific devise of the residence of decedent and a bequest of the household goods in the residence at the time of the death of the decedent. Such property would otherwise be disposed of by executor's sale and the proceeds would be received by certain specific named beneficiaries in the original will.

The executor argues on appeal that the document is ambiguous and that other evidence surrounding its execution should be admissible to show the intent of the decedent. He also contends that the evidence would indicate that the document was not testamentary in nature.

Appellee Etta Mae Peters, who is the beneficiary designated in the tendered second codicil, contends that testamentary intent is clear from the document and that even the other evidence which was presented tends to support the finding of testamentary intent. Appellee also contends on appeal that the executor lacks standing to prosecute the appeal.

It appears from the record that Zathoe Hauter executed her last will and testament on November 12, 1965. In that will she left all household goods and furniture to her niece and nephew, and the remainder of her estate, including her residence, was to be sold and the proceeds therefrom used to pay specific bequests to various individuals, charities and public bodies. Any amount remaining after payment of specific legacies was to be divided equally between two named residuary legatees. J. L. Brown was designated as executor. Slightly over a month after execution of the will, on December 20, 1965, the decedent executed her first codicil to her will which increased the bequest of one individual, who was provided for in the original will, and added specific bequests to two additional persons. In all other respects the original will was ratified and confirmed.

We glean from the reading of the documents filed in the case that petitioner, Etta Mae Peters, was employed by decedent as a housekeeper and companion. After the execution of the 1965 codicil, and apparently some time in 1969, the decedent and Etta Mae Peters executed a handwritten document which reads, in its entirety, as follows:

> "*Agreement*—between
> 1st Party—Zathoe Hauter
> and
> 2nd Party—Etta Mae Peters
>
> *1st Party*
>
> I (Zathoe Hauter) give and bequeath unto 2nd Party (Etta Mae Peters) my residence at 1626 South Main Street, Princeton, Illinois. I also give and devise unto Etta Mae Peters all of the household goods and furnishings which I may own at the time of my death.
>
> Signed: /S/ Zathoe Hauter
>
> *2nd Party*
>
> I agree to stay with, care for and be a companion to 1st Party (Zathoe Hauter) for as long as she shall live.
>
> Signed: /S/ Etta Mae Peters
>
> *Witnesses*
>
> We are volunteering our names as attesting witnesses to the execution or agreement, which appears above.
>
> The above agreement was signed by both parties in the presence of us.
>
> /S/ Florence Peterson     residing at Princeton, Ill.
> /S/ Detra Guynn     residing at Princeton, Ill."

It is noted that the purported second codicil bears no date and there is a conflict in the testimony of the two attesting witnesses as to when the document was signed. One of the attesting witnesses, Detra Guynn, stated that she thought that the document was executed on October 4, 1969. The other attesting witness, Florence Peterson, testified, however, that she thought the document was executed sometime in December of 1969. Apparently after the execution of the document with which we are concerned, the decedent and Etta Mae Peters both signed a typewritten document entitled "Memorandum of Agreement." That agreement implies that Etta Mae Peters had tendered her resignation and stated she desired to move to Denver, Colorado, for employment and personal reasons. The typewritten document states:

> " \* \* \* In consideration of her forebearing leaving my employment and in consideration of the love and affection I have for her, I have this day deeded to her my house and household furnishings reserving the life use of same upon her promise to remain in my employ as long as I shall live. \* \* \*
>
> /S/ Zathoe Hauter
>
> In consideration of the above mentioned gifts, I agree to remain in the employment of Zathoe Hauter and to care for and be a companion to her for so long as she shall live.
>
> /S/ Etta Mae Peters"

This "memorandum of agreement" was not witnessed. It also appears that after the execution of the "memorandum of agreement" decedent executed a deed to the home in which she lived to Etta Mae Peters and, also, conveyed household goods, furniture and fixtures therein. Thereafter, on January 25, 1971, Etta Mae Peters executed a quit claim deed reconveying the residence and a conveyance was also made of the household goods, furnishings and fixtures therein.

Zathoe Hauter died on March 30, 1974. The estate was probated by the filing of the original will and the first codicil which were admitted to probate. Thereafter, Etta Mae Peters filed a two-count claim against the estate, based on the handwritten document with which we are concerned, and also, upon the "memorandum of agreement." In Count I she alleged a contract for services performed, and in Count II she alleged that a contract had been undertaken to make a will covering the same residence and personal property owned by the deceased.

Thereafter, prior to any action taken on the claims filed in probate, Etta Mae Peters filed a petition for admission to probate of the handwritten document as a second codicil to the last will and testament of Zathoe Hauter. The executor, thereafter, filed a motion or a petition to dismiss the claim, but the court proceeded with the hearing both on the petition for admission of the codicil and on the executor's petition to dismiss. The trial court, after hearing testimony of the attesting witnesses, and hearing the arguments, denied the motion of the executor to dismiss the petition and admitted the handwritten document as the second codicil to the last will and testament of Zathoe Hauter.

On appeal in this court, the executor argues that the instrument does not clearly manifest testamentary intent of the testator, and that surrounding circumstances should be considered showing that the document did not disclose a testamentary intent. Etta Mae Peters argues, as we have indicated, that the document clearly manifested testamentary intent and that it is not appropriate at this stage of the proceeding to consider surrounding circumstances, and, also, that even if the court did consider surrounding circumstances, the circumstances in fact would be consistent with the finding of testamentary intent. She has also contended, as we have noted, that the executor does not have standing to prosecute the appeal.

The argument of the petitioner that the executor does not have standing to prosecute the appeal is founded on section 329 of the Probate Act (Ill. Rev. Stat. 1975, ch. 3, par. 329). That section provides:

> "An appeal from a final order, judgment or decree of the court under this Act by any person who considers himself aggrieved shall be taken to the appellate or supreme court of this state in the same manner as in other civil cases."

It is the contention of Etta Mae Peters that the executor is not an

"aggrieved person" within the meaning of the statute, and thus has no standing to appeal.

■■ While the language of the statute indicates that any person "who considers himself aggrieved" may appeal, the courts have construed such language to mean that appeals should be allowed only by those who have actually been aggrieved by the order in question. (*In re Estate of Harmston* (1973), 10 Ill. App. 3d 882, 295 N.E.2d 66; *In re Estate of Bacher* (1931), 261 Ill. App. 547.) The courts have also held that an executor has a sufficient interest to appeal from an order denying probate to a will in which he is named as executor (*King v. Westervelt* (1918), 284 Ill. 401, 120 N.E. 241), and also that an executor who is not named in a subsequent will can appeal a decision to admit the second will to probate (*Connelly v. Sullivan* (1893), 50 Ill. App. 627.) We find no case directly treating the issue as to whether an executor has standing to appeal within the meaning and intent of the Illinois statutes, where the only effect of the order appealed from is to change the disposition of certain property passing under the will or a codicil from one party to another, in which the executor has no direct or personal interest.

It is argued by appellant by analogy from our opinion in *In re Estate of Harmston* (1973), 10 Ill. App. 3d 882, 295 N.E.2d 66, that we concluded there that an offeror for the purchase of real estate from an estate is not an aggrieved person within the meaning of the statute so as to permit him to appeal an order refusing to approve a sale to him. We stated in that opinion that " '[a]ggrieved means having a substantial grievance; a denial of some personal or property right" (see 10 Ill. App. 3d 882, 885.) That case, however, we should note, does not in any manner involve the question of an executor's right of appeal. An executor, unlike the offeror in the *Harmston* case, occupies a special position as the legal representative of an estate, and is not merely a disinterested bystander. While there is no personal property right of the executor directly involved in the instant case, there is a question of personal responsibility in seeing that the last will and testament and the codicils, to the extent that they are valid, are probated in accordance with the intention of the decedent. Our courts have held that an executor always has an interest in securing a proper construction of a will. (*In re Estate of Gerbing* (1975), 61 Ill. 2d 503, 337 N.E.2d 29.) In the cause before us, we are seeking to determine whether the execution of the handwritten document manifested a testamentary intent and what is a proper construction of the will and the alleged codicil. We conclude that an executor has standing to prosecute an appeal where such issues are to be construed and determined by the court.

On the basic issue before us as to whether the handwritten document was in fact appropriately executed as a second codicil, we note that it is not questioned that the document was executed by the decedent in

writing and was signed by her before two credible witnesses who testified that they believed that she was of sound and disposing mind and memory at the time of the execution of such document. (Ill. Rev. Stat. 1975, ch. 3, par. 43.) The question simply is presented to us, as it was to the trial court, to determine whether it was the intention of the decedent that the document operate as a testamentary instrument and whether it was the intention of Zathoe Hauter to make a testamentary disposition of the real estate and furnishings owned at the time of her death by such document.

■■ In the construction of documents for the purpose of ascertaining intent, such intent must be determined, if at all possible, by the language used in the instrument, and words should be given a plain and ordinary meaning as an aid to such construction. (*Feder v. Luster* (1973), 54 Ill. 2d 6, 294 N.E.2d 293.) The use of the words "bequeath" and "devise" with respect to the property in question, even though not correctly used in the relationship to realty and personal property, indicated a testamentary intent, notably in the expression which was used as to the household goods stating that those were the household goods "which I may own at the time of my death." The words "bequeath" and "devise" are technical words and are deemed to be used according to their technical meaning unless it clearly appears that they were not being used in that sense. (*Gridley v. Gridley* (1948), 399 Ill. 215, 77 N.E.2d 146.) It is difficult to attach anything but a testamentary intent when words of this type are used, particularly when they relate to a condition which will exist at the time of the death of the person executing such document.

■■ We recognize that the executor argues that the reading of the entire document, and in particular the heading "Agreement," and the second paragraph which promises continued care for the testatrix, there is some indication that the intent of the decedent may have been one of contract. It is contended that the intent, therefore, becomes ambiguous and the court should resort to extrinsic evidence. It is asserted by the executor that it is not clear whether the rights in the property are to pass at the time of the death of the testatrix or at the time of the execution of the instrument. Necessarily, if the rights in the property were to be vested immediately, then the document would not be considered testamentary in character. It is apparent, however, from the language of the document, particularly as relates to personal property, that the household furnishings described were those which Zathoe Hauter owned at the time of her death. If we read the document as the executor suggests, it would require a distortion of language to produce an immediate conveyance of the personal property which may be owned by the decedent at the time of her death. The courts, in construing documents of this nature, must consider all the words which are included in the documents in an attempt

to give the documents a natural and sensible meaning. (*Continental Illinois National Bank & Trust Co. v. Llewellyn* (1966), 67 Ill. App. 2d 171, 214 N.E.2d 471.) In view of the fact that there is no indication that the treatment of the real property and the personal property were to be handled in any manner differently, we believe the trial court properly concluded that the document clearly indicated a testamentary intent.

The circumstance that the document is labeled "Agreement" and contains a promise by another party does not prevent it from operating as a codicil if so designed and intended. An instrument executed with the requisite formalities and a testamentary purpose may operate as a codicil even though it is in the form of a deed, letter, or contract. *In re Francoeur's Estate* (1972), 8 Ill. App. 3d 567, 290 N.E.2d 396.

■■ We, therefore, agree with the trial court that the testamentary intent of Zathoe Hauter is apparent from the language in the instrument and it is not necessary at the initial probate stage to consider extrinsic evidence in the course of determining the right of the codicil to be probated. In the extrinsic evidence which was presented, consisting of the memorandum of agreement and the deeds, testamentary intent is not necessarily negated. While it is also true that the attesting witnesses differed as to the time of execution of the document, it does appear, and the court so concluded, that the document was executed before the date of the memorandum agreement and the deed and conveyance of personal property. The trial court heard the witnesses and was in the best position to judge which version was accurate. Even if we were to accept the December 1969 date, there is no evidence which would establish that the tendered second codicil was executed simultaneously with or after the memorandum of agreement.

■■ Nothing contained in this opinion is intended to answer any questions as to whether there was an ademption or any other questions which could properly be answered by a court in determining issues which are normally and properly raised in a will contest. The role of the court in determining the issue of the right to initial probate of a codicil is to ascertain whether the tendered codicil was properly executed by the decedent as her free and voluntary act with the intention to make it a testamentary document and was properly witnessed in accordance with the laws of the State of Illinois. We cannot find from the record that the trial court was incorrect in making such determination.

For the reasons stated, the judgment of the Circuit Court of Bureau County will, therefore, be affirmed.

Affirmed.

STOUDER and STENGEL, JJ., concur.