DOROTHY MARIE WILLIAMS, Plaintiff-Appellee, v. SPRINGFIELD MARINE BANK, Trustee, *et al.*, Defendants (Debra Marie Williams, a Minor, *et al.*, Defendants-Appellants).

Fourth District No. 4—84—0602

Opinion filed March 12, 1985.

Gary L. Smith, of Douglas G. Brown, P.C., of Springfield, for appellants.

John G. Hayes, of Springfield, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

The plaintiff, Dorothy Williams, filed a declaratory judgment action seeking construction of a trust agreement executed by her parents. The trustee, Springfield Marine Bank, and the plaintiff's children were named as defendants. A guardian *ad litem* was appointed to represent the plaintiff's minor children. The guardian *ad litem* appeals from a judgment on the pleadings in favor of the plaintiff. At issue is whether an addendum to the trust agreement executed by one of the settlors was a valid exercise of either a power to amend or a power of appointment by will.

On February 14, 1974, Ernest and Martha Olsen, husband and wife, entered into a trust agreement naming Springfield Marine Bank as trustee. The Olsens were made lifetime beneficiaries of the trust. Upon the death of the first settlor, the trust was to be divided into two separate trusts known as Trust A and Trust B. The surviving settlor was given a power of appointment exercisable by *will* over Trust A. In addition, paragraph 7 of the agreement stated, in part:

> "Upon the death of the surviving Settlor, the Trustee shall make distribution of the remainder of Trusts A and B in accordance with the power of appointment and the bequests provided in surviving Settlor's Last Will and Testament or each surviving Settlor's Last Will and Testament has failed to provide for the disposition of said property, the Trustee shall make distribution of the remaining trust estates to Settlors' daughter, Dorothy Marie Williams, if she be living, but if she has predeceased said surviving Settlor, then to her descendants, per stirpes, said distribution to be made to said descendents as and when each attains the age of twenty-five (25) years."

On April 1, 1978, Martha Olsen died. Ernest Olsen executed his last will on October 31, 1978. He gave all his personal property to his daughter and directed the residue of his estate, excluding any property over which he had power of appointment, to be added to the trust held under that agreement. On the same date, he executed a document entitled "Addendum to Ernest A. and Martha B. Olsen Trust No. 51—037—0." The addendum extended the trust agreement for the benefit of Williams during her lifetime. If she predeceased Ernest Olsen or died during the minority of any of her children, then the trustee was to continue to administer the trust for the benefit of her descendents until the youngest reached the age of 25. At that time, the trustee was to distribute the assets of the trust

equally among the descendents. In the final paragraph of the addendum, Ernest Olsen reaffirmed the trust in all other aspects.

Ernest Olsen died on August 5, 1983. Thereafter, Williams filed a complaint requesting the court to declare the addendum null and void. She contended Ernest Olsen alone had no power to amend the trust. Williams' two sons who had reached majority consented to a judgment against themselves. The court appointed a guardian *ad litem* for Williams' minor children. Williams moved for judgment on the pleadings, which the court granted. The court directed the corpus and accumulated income of the trust be distributed to Williams.

■■ The guardian *ad litem* asserts the trial court erred in holding that the survivor of the two settlors could not amend the trust. Generally, a settlor cannot modify or revoke a trust unless he has reserved the power to do so in the trust agreement. (*Mortimer v. Mortimer* (1972), 6 Ill. App. 3d 217, 222, 285 N.E.2d 542, 545; Restatement (Second) of Trusts sec. 331(1) (1959).)When a method of exercising a power to modify is described in the trust agreement, the power may be asserted only in that manner. *Parish v. Parish* (1963), 29 Ill. 2d 141, 149, 193 N.E.2d 761, 766; *Northwestern University v. McLoraine* (1982), 108 Ill. App. 3d 310, 317, 438 N.E.2d 1369, 1373.

The trust agreement did address the power to amend. Paragraph 3 stated, in part:

"The Settlors hereby specifically reserve the right to add to, amend, alter or cancel the Trust herein created. In the event of any additions to, alterations, or amendments of this Trust Agreement, the Trustee hereby specifically reserves the right of approval or rejection of any and all terms or conditions thereof."

Paragraph 1 designated Ernest and Martha Olsen as "Settlors." Paragraph 26 provided:

"The Settlors may at any time or times during their lifetime by instrument in writing delivered to the trustee amend or revoke this agreement in whole or in part. The trust property to which any revocation relates shall be conveyed to the Settlors or otherwise as they direct. This power is personal to the Settlors and may not be exercised by their legal representative or others."

The guardian *ad litem* contends the settlors would have wanted either of them to have the power to amend the trust at any time. He urges us to construe the trust to reflect this intent. The court's primary concern in construing a trust is to discover the intent that

the settlors had when they executed the instrument. The court must consider the plain and ordinary meaning of the words used, and the intent must be ascertained from the entire document. Thus, the inquiry is not limited to the language of a particular phrase, sentence or clause. (*First National Bank v. Canton Council of Campfire Girls, Inc.* (1981), 85 Ill. 2d 507, 514-15, 426 N.E.2d 1198, 1201-02.) The court, however, is limited to establishing not what the settlors meant to say, but what was meant by what they did say. (*Kavanaugh v. Estate of Dobrowolski* (1980), 86 Ill. App. 3d 33, 41, 407 N.E.2d 856, 863.) The court's function, therefore, is not to modify the trust or create new terms different from those to which the parties have agreed. *Northern Trust Co. v. Tarre* (1981), 86 Ill. 2d 441, 450, 427 N.E.2d 1217, 1221.

The guardian *ad litem* relies on the *Tarre* case in support of his argument. In *Tarre,* a husband and wife transferred property into two separate trusts. After the wife died, the husband executed an amendment to his trust, which the supreme court held was valid. The court noted the agreement expressly reserved to each settlor the power to amend or revoke the agreement as to their respective trusts. Nothing in the agreement indicated that the other's consent was required or that the power could be exercised only while both settlors were alive. In order to hold the husband's amendment was invalid, the court decided "it would be necessary to read into that agreement conditions it does not contain, and which are contrary to the express language of the instrument and its clear intent." 86 Ill. 2d 441, 450, 427 N.E.2d 1217, 1221.

Unlike *Tarre,* the settlors in this case created a joint trust, which implies that any change would also be jointly made. To adopt the interpretation urged by the guardian *ad litem* would mean that either settlor could have modified or revoked the trust while both were living. Nothing in the agreement supports this interpretation. In fact, the express language supports a contrary construction. Unlike the agreement in *Tarre,* the present one did not expressly reserve the power to modify to each settlor. Instead, both paragraphs 3 and 26 reserved the power to the "Settlors." Paragraph 26 uses the word "their," also a plural. The guardian *ad litem* maintains the settlors may have used the word "their" instead of the singular pronouns, his or her, in an effort at gender awareness. The prevalent use of the phrase "his or her" throughout the agreement negates this contention. Finally, other portions of the agreement demonstrate that when the settlors wanted a power to be exercisable by either of them, they expressly provided for it.

The guardian *ad litem* contends the agreement should be construed to give the surviving settlor the power to amend. He points out that the surviving settlor had a power of appointment over the trust. The agreement, however, limited that power so that it could be exercised only by will. Moreover, when the 'settlors intended the survivor to have a power exercisable alone, they expressly provided for it. Courts from other jurisdictions have consistently held that clauses similar to paragraph 26 create only a joint power which cannot be exercised by the surviving settlor. (*In re Race's Trust* (1957), 9 Misc. 2d 155, 169 N.Y.S.2d 600; *Noble v. Rogan* (S.D. Cal. 1943), 49 F. Supp. 370; *In re Solomon's Estate* (1938), 332 Pa. 462, 2 A.2d 825; *Croker v. Croker* (1921), 117 Misc. 558, 192 N.Y.S. 666.) Where the power to modify a trust has been reserved to the joint settlors of the trust, both must join in executing an instrument to effectuate a change. An attempted modification by one after the death of the other is a nullity. *Culver v. Title Guarantee & Trust Co.* (1945), 269 App. Div. 627, 58 N.Y.S.2d 116.

As previously mentioned, the surviving settlor had a power of appointment exercisable by will. The guardian *ad litem* argues the addendum was a valid will. Section 4—3 of the Probate Act of 1975 requires every will to be in writing signed by the testator or by someone in the testator's presence and by his direction and attested by at least two credible witnesses in the testator's presence. (Ill. Rev. Stat. 1983, ch. 110½, par. 4—3.) Ernest Olsen signed the addendum, as did Dale Hendricks, Springfield Marine Bank's trust officer. In addition, Harold Olsen, Ernest Olsen's attorney, initialed all three pages of the addendum. The guardian *ad litem* concludes the statutory requirements were met.

We have some doubt as to whether the guardian *ad litem* is correct. One who signs his name to a will is not an attesting witness unless he signs with that intention and not for some other purpose. (2 Page on Wills sec. 19.129, at 246 (Bowe-Parker rev. 1960).) In *Gump v. Gowans* (1907), 226 Ill. 635, 80 N.E. 1086, the court refused to admit a deed to probate as a will. An attempt was made to supply one of the required witnesses by the signature of the deceased's husband on the deed. The court first noted that the husband had signed as a grantor and not for the purpose of attesting his wife's signature. The court went on to hold that even if he had signed as an attesting witness, the husband could not be a competent witness.

Attesting witnesses are regarded, in law, as persons placed around the testator in order that no fraud be practiced upon him in

the execution of the will and to judge his capacity. (*In re Estate of Weaver* (1977), 50 Ill. App. 3d 223, 230, 365 N.E.2d 1038, 1044.) Hendricks clearly did not sign the addendum with the intention of being an attesting witness. The original agreement required the trustee's approval of any modification. Rather than signing in his individual capacity as a witness, Hendricks signed as a trust officer on behalf of the corporate trustee.

More importantly, we cannot construe the addendum as a will. Ernest Olsen clearly intended the addendum to act as an *inter vivos* amendment to the trust agreement rather than as a testamentary disposition.

> "If the intention of the maker is fairly and honestly in doubt and if instrument is valid if of one type and invalid if of another, many courts will construe it to be of the type which will render it valid. The courts prefer in instances of honest doubt that solemn, written instruments be given some effect rather than none at all. *** This can not be done however if the language of the instrument is clear or if the actual evidence of the maker's intention more strongly points to an instrument of one type than another, *** although its execution would be sufficient if of such other type, but insufficient if of the type intended by the maker." 1 Page on Wills sec. 6.4, at 234-35 (Bowe-Parker rev. 1960).

Ernest Olsen titled the document as an addendum to the trust agreement rather than as a will. Furthermore, the addendum was not executed with the usual formalities of a will, such as an attestation clause. The guardian *ad litem* correctly points out that it is the maker's intent rather than the form of the document which determines if it is a will. (*In re Estate of Francoeur* (1972), 8 Ill. App. 3d 567, 290 N.E.2d 396.) The fact that Ernest Olsen executed another document with all the usual formalities of a will on the same day, however, strongly indicates he did not intend the addendum to operate as a testamentary disposition.

The guardian *ad litem* cites cases in which courts have construed letters or contracts as wills or codicils. (*Austin v. First Trust & Savings Bank* (1931), 343 Ill. 406, 175 N.E. 554; *Brown v. Peters* (1976), 39 Ill. App. 3d 962, 350 N.E.2d 565; *In re Estate of Francoeur* (1972), 8 Ill. App. 3d 567, 290 N.E.2d 396; *In re Estate of Apsey* (1936), 285 Ill. App. 29, 1 N.E.2d 558.) In each case, the document in question contained language evidencing a testamentary intent. There must be something in the writing itself which imparts to it a testamentary character. *Noble v. Fickes* (1907), 230 Ill. 594, 82

N.E. 950.

"An instrument is not a will unless it is executed with testamentary intent. The animus testandi does not depend upon the maker's realization that he is making a will, or upon his designation of the instrument as a will, but upon his intention to create a revokable disposition of his property to take effect after his death. It is essential, however, that the maker shall have intended to express his testamentary wishes in the particular instrument offered for probate." *Hinson v. Hinson* (1955), 154 Tex. 561, 564, 280 S.W.2d 731, 733.

The language of the addendum suggests that it was to become effective immediately. The introductory paragraph states that it is made on October 31, 1978, and "does hereby extend" the original agreement for the benefit of the settlor's daughter, during her lifetime, and upon her death for the benefit of her descendents. Nothing in the addendum made Williams' lifetime interest contingent on the death of her father. Although the enjoyment of the descendents' interests was made partially dependent on whether Williams predeceased her father, this did not render the disposition testamentary. The addendum attempted to create an immediate equitable interest in these beneficiaries. (*In re Estate of Petralia* (1965), 32 Ill. 2d 134, 204 N.E.2d 1.) Ernest Olsen assumed he could make an *inter vivos* amendment to the trust. We cannot construe this addendum as testamentary merely because it was ineffective as an *inter vivos* amendment. The maker must intend at the time of the execution that the document itself operate as a will or codicil. *In re Will of Mucci* (1975), 287 N.C. 26, 30, 213 S.E.2d 207, 210.

For these reasons, the judgment of the trial court is affirmed.

Affirmed.

GREEN, P.J., and MILLS, J., concur.