**MARVIN F. HALL TRUST, First National Mercantile Bank and Trust Company, Joplin, Mo., Janice A. Hall, and Grace E. Hall, as Trustees under Intervivos Trust Agreement executed by Marvin F. Hall, Plaintiffs–Respondents,**

v.

**Janice A. HALL, June Hall, Jean Hall, James Hall, and Grace E. Hall, as Guardian of the Person of Joyce Hall, Defendants–Respondents,**

and

**Paul Francois Disdier, James Fullerton Disdier, and the Unborn Heirs of Janice A. Hall, of June Hall, of Jean Hall, of James Hall, and of Joyce Hall, Defendants–Appellants.**

No. 17211.

Missouri Court of Appeals,
Southern District,
Division Two.

June 13, 1991.

Robert L. Bradley, Blanchard, Van Fleet, Martin, Robertson and Dermott, Joplin, for defendants-appellants Disdier.

John J. Podleski, Crandall & Dally, Carthage, for defendant-appellant unborn heirs.

Robert W. Richart, Joplin, for defendants-respondents Halls.

Daniel E. Scott, Timothy R. Whelan, Copeland, Scott & Whelan, Joplin, for plaintiffs-repondents trustees.

SHRUM, Judge.

This lawsuit was brought by the trustees of the Marvin F. Hall intervivos trust after a member of one class of beneficiaries, the children, requested a discretionary distribution of trust income after she had reached the age of 35 years.

In Count I of their two-count petition, the trustees sought construction of the trust instrument claiming an inconsistency between paragraphs 2(a)(1) and 13 created an ambiguity concerning the trustees' authority to distribute trust income to children age 35 and older. The trial court determined there was an ambiguity and held that the trustees have discretion to distribute trust income to the grantor's living children even though they are older than 35.

In Count II the trustees asked the trial court to construe paragraph 8 of the trust instrument, and the court found that a majority of the grantor's living children have authority to "approve an accounting by the trustees and to discharge the trustees from all liability for acts and omissions concerning all matters disclosed in such account; and such settlement and discharge shall be conclusive and binding upon all persons and entities, including the minor and unborn heirs and beneficiaries."

The trial court judgment is appealed by the minor grandchildren of the grantor, through their guardian ad litem, and by the guardian ad litem of the unborn heirs of the grantor's children. Respondents on ap-

peal are the trustees and the grantor's children.

We affirm that part of the judgment in which the trial court authorized discretionary distribution of income to the children even though they are older than 35. We reverse the portion of the judgment which construes paragraph 8 and remand to the trial court with instructions to dismiss Count II of the trustees' petition.

## FACTS

On January 1, 1965, Dr. Marvin F. Hall executed an intervivos trust agreement which created three classes of beneficiaries: his children as of the date of the trust (*children*), the issue of the children (*issue*), and Dr. Hall's grandchildren living on the date of death of the last of the children (*grandchildren*). The class of children consists of James, Janice, June, Jean, and Joyce, all of whom are living and the youngest of whom turned 35 in 1984. The class of issue consists of Paul Francois Disdier and James Fullerton Disdier, the minor children of June Hall.

Initially the trustees were Dr. Hall, his daughter, Janice, and one Max Myers. Myers died around 1977 and the vacancy created by his death was not filled until the corporate trustee (*bank*) was appointed in October 1982. Income distributions were made from the trust to certain of the children for the fiscal years ending June 30, 1980, June 30, 1981, and June 30, 1982, dates prior to the bank's becoming a co-trustee, but after the recipient children had reached age 35.

In 1989, Jean Hall wrote the bank requesting a discretionary distribution from the trust income. Trust officers of the bank reviewed the trust and concluded there was "some confusion within the trust document" about the trustees' authority. Review by outside counsel resulted in the same opinion, that there was "confusion within the terms of the document...." This lawsuit for construction of the trust followed.

The request that the trustees distribute trust income is grounded on paragraph 2(a)(1) of the trust instrument, which reads:

(a) At the end of each fiscal year during the lives of the present children of the Grantor, commencing with the fiscal year ending June 30, 1965, the Trustees shall accumulate the net income by adding and incorporating it into the capital of the trust estate and thereafter administering set net income as an integral part of the capital, provided however:

(1) That the Trustee shall have the power to pay or apply to or for the benefit of present living children of the Grantor who are then living and under 35 years of age, or to any one or more of their issue, prior to incorporation of that year's net income into capital, so much of the net income at such time or times and in such amount or amounts as the Trustee may deem advisable, for the support and maintenance of the present living children of the Grantor or for the support and maintenance of any one or more of their issue, and in either case, at such times, in such manner, and in such proportions among such of these beneficiaries as the Trustees may deem advisable; and provided further; that the Trustees, in the case of each payment or application of income, shall determine that such payment or application is reasonably necessary to enable the beneficiary to be maintained in accordance with the station in life which such beneficiary has established. In making such determination, the Trustees shall take into consideration the amount of income which such beneficiary may enjoy from sources other than this Trust Estate. At the end of each fiscal year, the Trustees shall add to the capital of the trust estate, as above provided, all of the net income for that year which was not paid to, or applied for the benefit of, such beneficiaries.

In their petition, the trustees claimed that certain provisions in paragraph 2(a)(1) are inconsistent with the following portion of paragraph 13:

To more fully express his intention, the Grantor hereby declares that his primary purpose in establishing this trust is to assure his present living children and

their issue additional income if necessary, to further provide the present living children of the Grantor and their issue with material comforts during their lives, and to provide an inheritance for such issue....

The alleged inconsistency, the trustees claimed, created "an ambiguity as to the power of the Trustees to make discretionary payments under paragraph 2(a)(1) to Children older than 35 years of age."

In Count II the trustees sought construction of paragraph 8 which reads:

The Trustees may at any time render an account of their acts to the present living children of the Grantor who shall have the full power to settle any such account and, upon the basis thereof, to discharge the Trustees from all liability for acts and omissions concerning the matters embraced in such account. Such settlement and discharge shall be binding upon all persons, even if then under legal disability or unborn, and shall have the same force and effect as a final decree of a court of competent jurisdiction in which all necessary and proper parties are present and represented. Nothing herein, however, shall preclude the Trustees from having their accounts judicially settled, whenever they deem such settlement advisable.

In paragraphs 13 and 14 of Count II, the trustees assert that paragraph 8 of the trust is "ambiguous as to the method for the Trustees to account for their acts" in that it is unclear whether settlement of an account requires unanimous or majority approval by the children. In paragraph 15 and 16 of Count II, the trustees extol the clarity of the terms of paragraph 8 concerning discharge of the trustees from liability, but they question "the operative effect of such language...."

By their separate answers and in their respective prayers for relief, the children, the grandchildren, and the unborn heirs requested that the court "enter its order determining that it is necessary that *all* of the Children approve an accounting by the Trustees in order to discharge the Trustees from liability for past actions so accounted ... (emphasis added)."

Over the appellants' objection, the trial court heard testimony from the bank's trust officer Doug Hauser, grantor's accountant Dan Stengel, four of grantor's five children, and grantor's widow Grace Hall. Summarized, their testimony was that Dr. Hall had great affection for his children. He often stated that he wanted the income from the trust to be used for his children, if necessary, for their maintenance and care throughout their lifetimes. Dr. Hall's desires grew out of his devotion to his children, his desire that they never be confronted with the financial struggles which he had faced as a young person, his concern that a family illness (diabetes) might adversely affect his children in their ability to provide for themselves, and the particular needs of his youngest child Joyce. He aided his children financially after they became adults. While serving as trustee, Dr. Hall made income distributions from the trust to children who were older than 35. Dr. Hall expressed his belief that the age restriction in paragraph 2(a)(1) was inconsistent with what he wanted for his family and that he wished he could amend the trust but could not.

The trial court determined that the pertinent language of the trust instrument was "ambiguous and subject to construction," and it held that the trustees have discretion to distribute trust income to the grantor's living children even though they are older than 35. Despite the unanimous request by all beneficiaries and potential beneficiaries that the trial court require all living children to approve accountings from the trustees and discharge them from liability, the court ruled that a majority of the children had authority to do so. The court also ruled that the living children's settlement and discharge "shall be binding upon all persons or entities, including the minor and unborn heirs and beneficiaries."

## ANALYSIS AND DECISION

### Age 35 Provision

The paramount rule of construction in determining the meaning of a trust

provision is that the grantor's intent is controlling. *First National Bank v. Hyde,* 363 S.W.2d 647, 652 (Mo.1962). All technical rules of construction must give way to this controlling rule. *See Grace v. Perry,* 197 Mo. 550, 95 S.W. 875, 877 (1906). In determining the intent of the grantor, we consider the trust instrument as a whole, *Commerce Trust Co. v. Starling,* 393 S.W.2d 489, 494 (Mo.1965); *Hyde,* 363 S.W.2d at 652. We do not give any clause in the trust instrument undue preference. *See St. Louis Union Trust Co. v. Clarke,* 352 Mo. 518, 178 S.W.2d 359, 363 (banc 1944).

The appellants contend that the trial court order permitting discretionary distributions of trust income to children 35 years of age or older is erroneous because it ignores the expressed direction in paragraph 2(a) that the trustees incorporate trust income into capital except to the extent distributed to children younger than 35 or their issue as authorized by paragraph 2(a)(1). The appellants rely on *Starling* for the proposition that "instruments must be construed to avoid, if possible, repugnancy in the various provisions.... If possible, effect should be given to all of the language used...." 393 S.W.2d at 494.

The appellants acknowledge a potential conflict between paragraphs 2(a)(1) and 13. They state in their brief, "If any ambiguity exists it must be that the Grantor has expressed his purpose to be, among other things, the provision of material comforts to his children during *their lives,* but has granted the Trustee discretion, in non-emergencies, to provide these material comforts to his children only *before they reach 35 years of age*" (emphasis in original). Potential ambiguity notwithstanding, appellants assert, "[e]ach of the Trust provisions may be given effect and repugnancy avoided only by prohibiting discretionary distributions of Trust income to Children 35 or older."

Appellants argue that the grantor's three-fold purpose, as expressed in paragraph 13, is satisfied by the following construction: The first purpose, the assurance of additional income, is fulfilled by paragraph 2(b) which allows distributions of trust capital to children and issue in the event of a financial emergency "as a result of accident, illness, or other unusual circumstances...." The second purpose, provision of material comforts to the children and their issue during their lives, is met by paragraph 2(a)(1). The third purpose, to provide an inheritance for the issue of the children, is accomplished by paragraph 2(c), which directs the trustees to distribute the entire trust estate to the then grandchildren upon the death of the last of the children.

■ Appellants' construction does not squarely address the ambiguity that arises when the trust instrument is read as a whole, not giving any clause in the trust undue preference. In paragraph 13 the trustees are directed to provide for the material comforts of the children during their lives, but in paragraph 2(a)(1) the trustees are directed to accumulate income and make no non-emergency distributions of income to children who have reached 35 years of age. As written, paragraph 2(a)(1) prohibits the trustees from providing for the material comforts of the children once they are 35 years old, a prohibition contrary to the direction in paragraph 13. The provisions cannot be reconciled and create an ambiguity in the instrument.

■ The problems presented by the trust instrument under consideration are patent, that is, they are apparent to a person who reads the entire document with care. *See Helmer v. Voss,* 646 S.W.2d 738, 741 (Mo. banc 1983). In such a case, the court must read the instrument "as near as may be from [the grantor's] standpoint, giving effect, if possible, to every clause and portion of it, and to this end, if need be, words may be supplied and omitted...." *Grace,* 95 S.W. at 877; *Schupbach v. Schupbach,* 760 S.W.2d 918, 924 (Mo.App.1988) (Maus, J., concurring). In a case involving a patent ambiguity, it is permissible to resort to extrinsic evidence of surrounding circumstances to explain the relationship of the grantor to the beneficiaries. *See Helmer,* 646 S.W.2d at 741.

Extrinsic evidence likewise is admissible to determine the grantor's motives. *Schupbach*, 760 S.W.2d at 923. In the case of a patent ambiguity, evidence of the grantor's declarations of intent, whether made before, at the time of, or after execution of the trust instrument, generally is inadmissible. *Breckner v. Prestwood*, 600 S.W.2d 52, 56 (Mo.App.1980).

■ Disregarding evidence about Dr. Hall's declarations of intent, there was substantial evidence about his motives and his relationship with his children. Thus the trial court could have found Dr. Hall intended to grant the trustees discretion to distribute income from the trust to the children for their entire lives. With this evidence and Dr. Hall's declaration of purpose in paragraph 13 in mind, the repugnant words of paragraph 2(a)(1) may be omitted to give effect to Dr. Hall's true intent. We affirm that part of the trial court's judgment which holds that the trustees have the discretionary power to pay net income to the children even though they are older than 35 years of age.

*Accounting and Discharge Clause*

■ Generally, a court of equity, as part of its general supervisory powers over trusts, has the authority to instruct and advise trustees about their powers and duties. *McEntee v. Halloran*, 391 S.W.2d 266, 268 (Mo.1965); A. Scott & W. Fratcher, *Scott on Trusts* § 259 (4th ed. 1988); G. Bogert & G. Bogert, *The Law of Trusts and Trustees* § 559 (rev. 2d ed. 1980); *Restatement (Second) of Trusts* § 259 (1959).

However, there are limits on a court's authority to advise and instruct trustees, the prime limitation being that such instructions should be given only when the trustees have reasonable doubt about their duties. *State ex rel. St. Louis Union Trust Co. v. Sartorius*, 350 Mo. 46, 164 S.W.2d 356, 359 (banc 1942). As has been said, courts should not serve as legal advisers to trustees. *McEntee*, 391 S.W.2d at 268; *First Nat'l Bank v. Christopher*, 624 S.W.2d 474, 481 (Mo.App.1981). Thus, the purpose of a court's guidance to trustees is to protect the trustees "in those situations

where the advice of competent lawyers is not sufficient protection because of doubtful meaning of the trust instrument or uncertainty as to the proper application of the law to the facts." *Christopher*, 624 S.W.2d at 481. Ordinarily, courts do not instruct trustees concerning questions that may never arise or have not yet arisen. *Campbell v. Spotts*, 331 Mo. 974, 55 S.W.2d 986, 990 (1932); A. Scott & W. Fratcher, *supra* at 408; G. Bogert & G. Bogert, *supra* at 178–80.

■ The corporate trustee bank has a trust department and trust officer Hauser is an attorney. Pursuant to its standard procedures, the bank, at the time it was designated successor trustee, obtained "a release or indemnification agreement" which contained "a release from all the beneficiaries to all prior trustees" and "to the bank stating that the bank will be held not responsible for any prior co-trustee action, that which preceded [the bank's] appointment." It is the bank's "standard practice" to refer certain questions to outside counsel. From the record, it is evident the bank routinely relies on legal counsel to resolve questions regarding trusts, and we believe the advice of competent lawyers should provide sufficient protection to the trustees regarding the operation of paragraph 8.

Moreover, we do not believe a question about the operation of paragraph 8 has arisen. When appointed trustee, the bank apparently had "no specific concern" about the trustees' authority. It was only after Jean Hall, one of the children, asked for distribution of income that the bank began to question the trustees' power. It is evident from the record that the bank sought the advice of outside counsel and brought this action because of "doubt as to the ability of the trustees to grant the distribution." The bank's "doubt" appears to have had nothing to do with paragraph 8. There is nothing in the record to indicate that the trustees had rendered an account to the children or that the trustees had sought a discharge from liability.

It is not appropriate for the trial court or this court to act as the trustees' legal ad-

visers; the trial court exceeded its jurisdiction in construing paragraph 8 of the trust instrument. The judgment as to Count II is reversed and the cause remanded to the trial court with instructions to dismiss Count II.

FLANIGAN, C.J., and PARRISH, P.J., concur.