942 S.W.2d 926 (1997)
In re the CARL McDONALD REVOCABLE TRUST DATED OCTOBER 1, 1979.
HOME OF HOPE, INC., Appellant,
v.
Betty L. McDONALD and C.R. Rhoades, Successor Trustee, Respondents.
No. 20971.
Missouri Court of Appeals, Southern District, Division Two.
January 8, 1997.
Motion for Rehearing or Transfer Denied January 30, 1997.
*928 John S. Dolence, Spencer, Scott & Dwyer, P.C., Joplin, Mark W. Curnutte, Logan & Lowry, Vinita, OK, for appellant.
Ron Mitchell, Joplin, Blanchard, Robertson, Mitchell & Carter, P.C., for respondent, Betty L. McDonald.
SHRUM, Chief Judge.
Appellant, Home of Hope, Inc., (Home of Hope) is a contingent beneficiary under a revocable trust executed by Carl McDonald (Carl) in 1979. Respondent Betty McDonald (Betty) is Carl's widow and is a beneficiary of the trust which was amended by him three times. An attempted fourth amendment was earlier declared invalid.[1] The instant appeal involves a declaratory judgment action filed by C.R. Rhoades, the successor trustee (successor trustee) seeking an interpretation and declaration of the meaning of the third amendment.[2] Home of Hope, in an amended answer, sought declaratory relief and recovery of its attorney fees. Likewise, Betty requested declaratory relief via her pleadings.
In a revised judgment dated in July 1994, the trial court decided the issues raised in the successor trustee's declaratory judgment action favorably to Betty. By a separate judgment, the trial court also denied Home of Hope's request for attorney fees.[3] This appeal followed.[4] We affirm.
According to McDonald-I, the provisions that Carl made for Betty in his original trust included the following:

*929 "(1) ... [T]he use for her lifetime of a residential property owned by Carl prior to his marriage to Betty and located at 3510 South Joplin, Joplin, Missouri; the trust was to pay all taxes, insurance and reasonable costs of maintenance for the property;
....
"(4) she was to receive $1,000.00 per month for her lifetime and $2,000.00 per year reimbursement for travel and vacation expenses...."
814 S.W.2d at 943.
Carl's first amendment to the trust indenture gave the trustee additional personal property and "allowed the Trustee to increase the monthly income to Betty ($1,000 per month) within his discretion to take into consideration the `present inflationary rate.'" Id.
Carl's second amendment, dated November 26, 1983, "[r]evoked" the previous Article FIRST C 1 and adopted "a new Article FIRST C 1. ... in lieu thereof." By subparagraph 1.b of this amendment, Betty was given a life estate in additional real estate, commonly known as the "Mickey Mantle Holiday Inn" parcel, henceforth called "Motel Property." Additionally, Betty was authorized to lease the subject real estate but was also required to pay its taxes, insurance, and reasonable costs of maintenance. Continuing, the second amendment revoked the original Article First C 4, and made another provision in lieu thereof. In this part of the second amendment, Carl stated that if net income from the Motel Property did not provide Betty with $1,000 per month, the Trustee was to make up the difference, "it being [Carl's] intent ... that ... Betty ... receive at least ... $1,000.00 per month [for her lifetime] from the [Motel Property] and the Trust created herein[.]" Additionally, Carl gave the successor trustee discretionary power to increase Betty's monthly allowance if "our present inflationary rate continues and... $1000.00 per month does not prove sufficient to provide for the reasonable care and maintenance of Betty...." The amendment left Betty's $2,000 annual vacation allowance unchanged.
Less than a month later, on December 23, 1983, Carl amended his trust a third time. In pertinent part, the third amendment read:
"[T]he Revocable Trust Agreement dated September 16, 1979, as heretofore amended, is hereby amended and modified in the following manner and respect, to wit:
"1.b. `The Successor trustee shall distribute to my wife, Betty ..., the following described real estate:
[legal for residential property & adjoining lots]
for her life, the remainder to Successor Trustee....
....
"Except as herein amended, the parties hereto ratify and confirm all the other provision of the Revocable Trust Agreement dated September 16, 1979, and the Amendment ... dated April 15[,] 1980, and the Amendment ... dated November 26, 1983...."
Carl died June 18, 1988. McDonald-III at 273. Although the status of the Motel Property at that time is not entirely clear, the record suggests that by the early 1990's, it was producing but little gross income and no net income. In part, this was due to the fact that the buildings were in "a dilapidated or run-down condition" and also because of competition from newer motels. Whatever the Motel Property income was, it went to the trust after Carl's death and not to Betty. On the other hand, Betty had not paid the taxes, insurance, or maintenance costs for the Motel Property as directed in the trust.
In 1990, the successor trustee was attempting to sell part of the Motel Property to "Braums." In order to proceed, the successor trustee needed a quitclaim deed from Betty. They negotiated an agreement wherein Betty agreed to convey her interest in the Braums portion of the Motel Property for $50,000, but retained her "right to receive full monthly income from July 1, 1990 forward." *930 The sale to Braums was closed and Betty received the $50,000.
In 1993, the successor trustee sold the balance of the Motel Property to Lowes. On this occasion, the successor trustee's lawyer signed an agreement with Betty concerning this prospective sale. The pertinent parts of that agreement follow:
"... Betty ... will sign the Quit-Claim Deeds conveying the `Holiday Inn' and `Skateland' property in exchange for $100,000.00 for her interest ... in the event the Court of Appeals restores her rights under the ... Trust.... It is further understood... that this payment will be solely for Betty's life estate interest and will not affect her right to receive any other benefit under the trust, including her right to receive monthly support."
"[We also agree] ... that ... [if] the Court of Appeals sustains the trial court's decision to forfeit Betty's rights and benefits under ... the trust, that the trustee will not independently pursue any action to recover the $50,000.00 paid for Betty's interest for her life estate in the `Braum's' tract. [We agree] that such payment was a compromise and settlement of disputed claims as of that time and not contingent upon her succeeding claims under the trust."
"However, both parties agree that this understanding is not binding, upon any beneficiary, including the Home of Hope and actions they may pursue, if any."[5]
We glean from the record that the sales to Braums and Lowes generated approximately $840,000, this being a figure before some expenses and payments to Betty.
The successor trustee filed this declaratory judgment suit on September 30, 1993, asking that the court interpret and declare the meaning of "the third amendment to [Carl's] Revocable Trust Agreement dated December 28, 1983." Ultimately, the issues framed by all pleadings included these: (1) did Carl, by his third amendment, intend to add to Betty's life estate property, thus giving Betty a life estate in both residential property and the Motel Property, or did he only intend by his third amendment to substitute the new residential property for the Motel Property; (2) if Carl's third amendment did not eliminate Betty's life estate in the Motel Property, were the agreements between Betty and the successor trustee concerning the sales "valid and enforceable[;]" (3) if the preceding two questions were answered affirmatively, did the receipt by Betty of $150,000 for her life estate interest mean that "she is entitled to no future benefits from the proceeds of that property[;]" and (4) should Home of Hope be reimbursed from the trust for its attorney fees incurred in connection with this suit?
An evidentiary hearing on these four issues was first held on March 14, 1994. A hand-written docket entry on that date recites: "Hearing held on petition for declaratory judgment & application for approval of atty fees and trustee fees. All attys present. Evidence adduced and arguments made. Ct. takes matters under advisement." Unfortunately, there is no transcript of that hearing included as part of the record on appeal.
On April 18, 1994, the court entered a judgment which declared, in part, "[t]hat the sole purpose of the Third Amendment... was to [grant Betty a life estate in Carl's] home and adjoining acreage ... and... it was the intention of [Carl] to distribute additional property to [Betty] and not to eliminate [Betty's] ... life estate in ... the [Motel Property]." The trial court also determined "[t]hat Betty ... has a beneficial interest in the sale proceeds of the [Motel Property] ... and that the agreed upon consideration of $150,000.00 ... is ... fair and reasonable consideration for [her] life estate interest in said property." In paragraphs (c)-(f) of the judgment, the trial court ordered Betty to repay the trust for certain taxes, insurance, and costs of maintenance *931 on the Motel Property; authorized the successor trustee to deduct from Betty's share of the sale proceeds any sums the trust had advanced for such expenses; authorized the successor trustee to deduct from Betty's $150,000 a sum equal to all $1,000 monthly support payments made by the trust to Betty after the Motel Property was sold; and ordered the successor trustee to suspend the $1,000 monthly support payments to Betty until "the monthly installments would equal the net balance paid by the trust to Betty ... for her interest in the life estate, had the payments been made as scheduled."
Betty filed a "Motion to Reconsider" the Judgment on April 22, 1994.[6] In it she asked the trial court to amend its April 18, 1994, judgment by altering the language of paragraph (b) and also by omitting paragraphs (c), (d), (e), and (f). Betty argued that court's orders in paragraphs (c)-(f) were directly contrary to her agreements with the successor trustee and that under the circumstances, he did not abuse his discretion as trustee in entering into such agreements.
The trial court sustained Betty's after-trial motion and set aside its April 18th judgment. After a second evidentiary hearing on July 1, 1994, the trial court entered a new judgment that eliminated paragraphs (c), (d), (e), and (f) as Betty had requested. As to all other issues, the trial court made the same findings that it had in its April 18, 1994, judgment, albeit with some language changes.
Home of Hope's initial attempt to appeal from the July 1, 1994, judgment was dismissed by this court. See note 2. On remand the trial court heard and decided previously unresolved claims. This appeal followed.
Home of Hope's first point maintains that the trial court erred when it construed the third amendment to mean that Betty was to have "additional property" when the "plain ... language used in the third amendment clearly shows [that Carl] substituted property in which Betty ... was to obtain an interest." Home of Hope assertscorrectly sothat "[t]he paramount rule of construction in determining the meaning of a trust provision is that the grantor's intent is controlling." Marvin F. Hall Trust v. Hall, 810 S.W.2d 710, 713-14[1] (Mo.App. 1991) (citing First National Bank v. Hyde, 363 S.W.2d 647, 652 (Mo.1962)). "All technical rules of construction must give way to this controlling rule." Hall, 810 S.W.2d at 714[1]. In determining the intent of a grantor, courts are to consider the trust instrument as a whole and are not to give any clause in the trust undue preference. Id. at 714[2]. Home of Hope insists that "[w]ith these well-settled rules of construction in mind, the effect of the third amendment is plainit replaces or supplants the terms of the second amendment."
Fatal to Home of Hope's first point is its failure to file a transcript of the March 14, 1994, hearing and include in the record on appeal a complete copy of the trust indenture. A transcript of the July 1, 1994, hearing was filed, but the evidence adduced at that hearing only pertained to the issue of whether Betty had a continued entitlement to the $1,000 monthly support payments. This transcript contained neither evidence nor arguments by counsel on the issue of whether Betty had a life estate interest in the Motel Property. Moreover, the transcript reveals that neither the original trust nor any of its amendments were offered or received at the July 1, 1994, hearing, either as marked exhibits or by agreement of counsel. Consequently, none of the trust documents, properly identified, are part of the only transcript filed with this court.
We hasten to add that the successor trustee attached to his petition an exhibit "A," *932 alleged to be the second amendment, and both Home of Hope and Betty admitted its authenticity via their pleadings. Additionally, Home of Hope and Betty have presented this court with a document that they seem to agree was Carl's third amendment.[7] If the absence of the second and third amendment from the record on appeal was the only problem, we could treat the second and third amendments as though they did appear in the record. See Estate of Lynn, 890 S.W.2d 694, n. 1 (Mo.App.1995) (recognizing that if a statement of facts is asserted in one party's brief and conceded to be true in the adversary's brief, appellate courts may consider it as though it appears in the record).
Unfortunately, however, we cannot glean from either the record or the briefs any such concession by the litigants concerning the original trust indenture and the first amendment. Instead, Home of Hope merely attaches as an appendix to its brief a partial copy of what it claims to be the trust indenture and a copy of what it asserts was the first amendment, with this explanation: "These documents are attached as an appendix to this brief to prevent the necessity of searching through prior appeal files and also to clarify the nature of each amendment."
The mere inclusion of the partial original trust agreement and the first amendment as part of an appendix to Home of Hope's brief does not make those documents part of the record on appeal. Roark Motor Lodge Interval Sales Corp. v. Lindner, 779 S.W.2d 684, 687 (Mo.App.1989). Where as here, it is not clear what documents were in fact presented to the trial judge, we will not consider them as part of the record on appeal. Id. Furthermore, it is not this court's duty to search prior appeal files to determine what made up Carl's complete trust indenture. Even if we were to do so, examination of those documents would tell us nothing about what was placed before the trial court in this case.
"On appeal, a trial court judgment is presumed valid," Delaney v. Gibson, 639 S.W.2d 601, 604[4] (Mo.banc 1982), and the burden is on appellant to demonstrate the incorrectness of the judgment. Id; Shadow Lake of Noel, Inc. v. Supervisor of Liquor Control, 893 S.W.2d 835, 838-39 (Mo.App. 1995). It is essential that this court have all the evidence necessary to determine the questions presented. Sydnor v. Director of Revenue, 876 S.W.2d 627, 628 (Mo.App.1994). As previously observed, this court is required to consider the trust instrument as a whole and not give any clause in the trust undue preference, Hall, 810 S.W.2d at 714[2], thus necessitating that a complete copy of the original trust indenture be part of the record on appeal. Likewise, the omitted transcript of the March 14, 1994, hearing is essential to our review, because without it we do not know what evidence, if any, was presented at that hearing regarding Carl's intentions in executing the trust indenture and its amendments.
An appellant is responsible for filing transcripts of the evidence and for preparing a legal file so that the record on appeal contains all of the evidence necessary for determination of questions presented to the appellate court for determination. Sydnor, 876 S.W.2d at 628[3] (citing Rule 81.12). Where no transcript is filed or exhibits are not made part of the record on appeal, such evidentiary omissions will be taken as favorable to the trial court's ruling and unfavorable to the appellant. Delf v. Cartwright, 651 S.W.2d 622, 624[3] (Mo.App.1983); Shadow Lake, 893 S.W.2d at 839[7].
Here, a part of the trust instrument that the trial court was to consider was not filed with this court nor was a transcript of *933 the March 14, 1994, hearing made part of the record on appeal. This court will not convict the trial court of error when we do not know what evidence was before it. The omitted evidence is taken by this court as favorable to that part of the judgment which declared that Betty had an interest in the Motel Property. Point I is denied.
Home of Hope's second point reads:
"The trial court erred in ruling that Betty... has a beneficial interest in the sale proceeds of the [Motel] Property and that such proceeds should not be set off against future payments from the trust in that such a finding is contrary to the plain language of the trust and results in an inequitable distribution of trust property in favor of Betty ... and detrimental to other beneficiaries."
As in Point I, Home of Hope's complaint is that trial court erred because its ruling was contrary to the plain language of the trust, yet this court has not been provided with a copy of the complete trust instrument. Even if we were to presume that the first document in the appendix to Home of Hope's brief was a part of the evidence before the trial courta presumption we decline to makethe partial document submitted terminates abruptly in the midst of its distributive provisions and prior to any enumeration of the trustee's general or special powers, not to mention the absence of a signature page. The omitted provisions may have been critical in the trial court's interpretation of the trust and resolution of the issues presented to it, especially since it was required to consider the trust instrument as a whole. See Hall, 810 S.W.2d at 714. As in Point I, we will presume the omitted portions of the trust instrument to be favorable to the part of the judgment complained of in Point II. See Delf, 651 S.W.2d at 624[3]; Shadow Lake, 893 S.W.2d at 839[7]. Yet again, we refuse to convict the trial court of error where the party complaining of error has made it impossible for us to review the trial court's ruling. Point II is denied.
Home of Hope's third and final point maintains that the trial court erred when it failed "to grant [Home of Hope's] application for attorney fees and expenses in that the fees and expenses sought ... were incurred in defending the trust property and resolving an ambiguity in the language of the trust."
As Home of Hope points out, it filed its application for attorney fees and expenses on July 5, 1995, with the clerk of the circuit court. However, there is no evidence in the record to indicate that the application was ever seen or considered by the judge. While the judgment entry indicates that evidence was presented and arguments heard, once again Home of Hope has failed to furnish this court with a transcript of those proceedings so we might know what was considered by the trial court. At most, the application for attorney fees and expenses might be viewed as a pleading. However, we do not look to pleadings as evidence. Landmark North Cty. Bank v. Nat. Cable Training Centers, Inc., 738 S.W.2d 886, 890[3] (Mo.App.1987).
Again, the judgment of a trial court is presumed valid on appeal. Delaney, 639 S.W.2d at 604[4]. The lack of a record supports the presumption that the trial court did not award attorney fees because there was no evidence that would support such a judgment. Home of Hope has failed to meet its burden to demonstrate otherwise. See id.; Shadow Lake, 893 S.W.2d at 838-39[6].
In reaching this conclusion, we do not ignore the general rule that a trial judge is considered an expert in determining the proper amount of compensation for legal services, thus making testimony as to legal services advisory and helpful but not mandatory. McDonald-III, 858 S.W.2d at 279[4]; Arnett v. Johnson, 689 S.W.2d 836, 838[8] (Mo.App.1985) However, as McDonald-III points out, this is only true to the extent that the judge awarding the fee was the judge before whom the case was tried because that judge would be familiar with the litigation and the work done by the lawyer seeking the fee. 858 S.W.2d at 279[4]. Here, the Hon. Joseph Schoeberl presided over the hearing on the application for attorney fees, but not *934 the litigation related to the successor trustee's petition for a declaratory judgment from which the attorney fees were allegedly generated. Thus, Home of Hope's claim for attorney fees was in particular need of evidentiary support, evidence which Home of Hope has failed to present for our consideration. Accordingly, Home of Hope's evidentiary omissions are taken as favorable to the judgment. See Delf, 651 S.W.2d at 624[3]; Shadow Lake, 893 S.W.2d at 839[7]. This court will not convict the trial court of a manifest abuse of discretion for denying Home of Hope's application for attorney fees when the applicant has made it impossible for us to review the trial court's ruling. Point III is denied.
MONTGOMERY, C.J., and PARRISH, J., concur.
NOTES
[1] The judgment which found the fourth amendment to the trust to be void was affirmed in McDonald v. McDonald, 814 S.W.2d 939 (Mo. App.1991), henceforth "McDonald-I." Other "McDonald Trust" litigation that has reached this court includes Matter of Trust of McDonald, 849 S.W.2d 150 (Mo.App.1993), herein "McDonald-II," and Matter of Trust of McDonald, 858 S.W.2d 271 (Mo.App.1993), henceforth "McDonald-III."
[2] This appeal is before this court for the second time. The first was dismissed for want of finality as the judgment failed to dispose of all claims. In re Carl McDonald Revocable Trust, 899 S.W.2d 138 (Mo.App.1995), henceforth "McDonald-IV."
[3] In its brief, Home of Hope asserts that the trial court, by multiple orders and judgments, has now disposed of all pending claims. Betty does not dispute that assertion.
[4] The successor trustee does not appeal from the declaratory judgment.
[5] The successor trustee and Betty made this agreement on January 7, 1993, some twenty-seven days before McDonald-II was handed down by this court, hence the reference in the contract to pending litigation. See Note 1.
[6] "[A] `motion for reconsideration [has] no legal effect as no Missouri rule provides for such a motion.'" Koerber v. Alendo Bldg. Co., 846 S.W.2d 729, 730 (Mo.App.1992). Frequently, however, Missouri courts do treat "a motion for reconsideration as a motion for new trial if timely filed." Id. Apparently, that is what the trial court did here. Nevertheless, "[c]ounsel ... are encouraged to properly identify their motions and refrain from the use of the term `motion for reconsideration.'" Id. at 730[2].
[7] Home of Hope attached to its brief what it claimed was Carl's third trust amendment. Betty sent an identical document to this court purportedly as part of a supplemental legal file, explaining: "Respondent hereby files her Supplemental Legal file consisting of the two exhibits admitted into evidence at the second hearing and the Third Amendment which is the subject of the controversy." Although Home of Hope and Betty do not expressly agree that the document sent to us was before the trial court, their briefs seem to concede that point.