Linda **KIMBERLIN**, et al., Respondents,

v.

Donald C. **DULL**, Successor Personal Representative of the Estate of Eugene L. Dull, et al., Appellants.

**No. WD 66741.**

Missouri Court of Appeals, Western District.

April 10, 2007.

Larry E. Butcher, Kearney, MO, for Respondents.

Samuel S. Zollicker, Kansas City, MO, for Appellants.

Before HOWARD, C.J., and EDWIN H. SMITH and NEWTON, JJ.

VICTOR C. HOWARD, Chief Judge.

Donald Dull appeals from a declaratory judgment interpreting the provisions of a trust. The trial court found that the sole surviving grantor effectively amended the trust after the other grantor's death. Dull contends language in the trust instrument allowed amendment only by a joint act of the grantors.

## Background

Eugene L. Dull and his wife of over 25 years, Margaret, created a revocable trust in January of 1998. The grantors transferred real property, their residence, to the trust. Both Eugene and Margaret were employed during their marriage and both significantly contributed to the trust assets. Eugene served as the sole trustee.

The original trust held the property for the benefit of Eugene and Margaret. The trustee was permitted to distribute to Margaret and Eugene as much of the income and principal as the trustee, Eugene, saw fit. One section described methods of amending and revoking the trust:

> Grantors, both individually and jointly, expressly reserve the right, at any time and from time to time, to revoke this Agreement, in whole or in part, by duly executed written instrument delivered to the Trustee. Grantors, *acting jointly only,* expressly reserve the right, at any time and from time to time, to amend or alter this Agreement, in whole or in part, by duly executed written instrument delivered to the Trustee.

(Emphasis added.) Furthermore, upon the death of both Margaret and Eugene, the remaining assets were to be distributed to several of Margaret and Eugene's relatives. Many of those listed beneficiaries, including Linda Kimberlin, are the plaintiffs in the current action.

Margaret died later in January of 1998. On January 15, 1999, the day before his marriage to his new wife, Dorothy, Eugene executed an amendment to the trust entitled "Amendment to Trust Agreement." It contained the language "Eugene L. Dull does wish to amend that trust" and "Grantors do hereby amend that trust as follows." It does not purport to revoke the original trust and constitute a new trust. The amendment benefited the current plaintiffs and Dorothy and made the trust irrevocable. In all other aspects, it retained the other provisions of the original trust. Eugene executed a quitclaim deed transferring the property to the "Eugene L. Dull Irrevocable Trust."

In the summer of 2000, against advice of his attorney, Eugene, acting personally, not as trustee, sold the trust property. Linda Kimberlin, a beneficiary under the trust, learned of Eugene's intent to ignore the terms of the amended trust and sell the trust property. She advised him to refrain from selling the property. Eugene ignored her protests.

On September 27, 2000, plaintiffs, including Linda Kimberlin, filed a *lis pendens* action to prevent distribution of the sale assets.[1] They sought a declaratory judgment construing the terms of the irrevocable trust as valid. In his answer, Eugene claimed that the irrevocable trust was invalid and counterclaimed for a declaratory judgment and slander of title. On September 4, 2001, Eugene purportedly revoked the amended, irrevocable trust by executing a revocation of trust.

On September 13, 2001, during the course of the litigation, Eugene died. His will was admitted to probate on October 18, 2001. His new wife, Dorothy, was appointed as personal representative for the estate. Dorothy was substituted as defendant in this action in November of the same year. Dorothy died on September 21, 2004. Donald Dull was substituted for Eugene and Richard Willard was substituted for Dorothy Dull.

The trial court found that Eugene was the sole beneficiary and sole trustee and had complete power to invade any portion of the original trust. Moreover, the language limiting amendment of the trust by only the joint act of the grantors, only contemplated that joint action would be required so long as both Margaret and Eugene were living. The provision in question did not, therefore, preclude Eugene from amending the trust, and the altered, irrevocable trust was valid.

### Standard of Review

■ No significant facts in the current case are disputed. "All parties generally agree upon the facts of the case; the disagreement is over the interpretation of the language of [the trust]. Thus, this is a question of interpretation of the language of the [trust] based on the testator's intent. Therefore, our review is *de novo*." *Blue Ridge Bank & Trust Co. v. McFall*, 207 S.W.3d 149, 156 (Mo.App. W.D.2006). When the issue is the construction of a legal document based upon the language used in it, we do not give deference to the trial court's judgment. *See In re Estate of Boder*, 850 S.W.2d 76, 79 (Mo. banc 1993).

### Analysis

■ While the facts of the case are not particularly concise, they are also not particularly pertinent. Our analysis is markedly narrow. The only task before this court is to determine if the original revoca-

---

1. The title company has impounded the proceeds of the sale and is holding them in escrow. It has expressed a willingness to abide by any order of this court with respect to disposition of the funds in question.

ble trust was subject to amendment after the death of one of the grantors.

■ " '[T]he paramount rule of construction in determining the meaning of a trust provision is that the grantor's intent is controlling.' " *In re Carl McDonald Revocable Trust Dated October 1, 1979,* 942 S.W.2d 926, 931 (Mo.App. S.D.1997) (citation omitted). "In determining the intent of a grantor, courts are to consider the trust instrument as a whole and are not to give any clause in the trust undue preference." *Id.* Absent ambiguity, the intent of the settlor is determined from the four corners of the trust instrument. *Commerce Bank, N.A. v. Blasdel,* 141 S.W.3d 434, 444 (Mo.App. W.D.2004). "It is [not] this court's function to rewrite a [trust] in order to effectuate a more equitable distribution or to impart an intent to the testatrix that is not expressed in the [trust]." [2] *Estate of Pettit v. Levine,* 657 S.W.2d 636, 643 (Mo.App. E.D.1983). "Whether power to revoke includes power to modify ... is a question of interpretation to be determined in view of the language used and all circumstances...." RESTATEMENT (SECOND) OF TRUSTS § 331 cmt. (g) (1959).

We now discern the meaning of the amendment clause.[3] Both parties agree that the trust allows a surviving grantor to revoke the entire trust after the death of the other grantor. The parties disagree if the right to revoke implies a right to amend.

Other jurisdictions have held that language giving grantors the power to alter, amend or modify a trust "during their lifetime" does not empower one grantor to amend the trust after the death of the other. For instance, in the case of *In re Solomon's Estate,* a husband and wife created a trust to benefit each of their three children. 332 Pa. 462, 2 A.2d 825, 826 (1938). The parents expressly reserved the right to amend or revoke the trust. *Id.* The trust stated, " '[t]he Donors shall have the power, at any time during their lifetime, by an instrument in writing delivered to the Trustee, to modify, alter or amend this agreement in whole or in part.' " *Id.* The parent-settlors together directed the trustee to cease making payments to one of their children. *Id.* Shortly after that, the father-settlor died. *Id.* The mother then directed the trustee to resume payments to the child. *Id.* The trustee declined, citing that the mother was unable to direct the trustee after the father had died. *Id.* The court agreed with the trustee and declined to allow the Mother to further amend the trust, holding "[i]t should not be in the power of either party after the death of the other to destroy the trust both created and both intended to subsist. If we held as appellant suggests that the power survived to the mother, it could be exercised to deprive the other children of their income. No trust jointly created would be secure under such a determination." *Id.*

We do not find this case, and others of its kind, to be on point. The central concern is fairness to the interests of the deceased grantor. In those cases, the surviving grantor was not allowed to revoke or amend the trust because to do so would contravene the wishes of the deceased grantor. In *In re Solomon's Estate,* the trust was explicitly unmodifiable after the

---

**2.** Missouri courts use the same rules of construction for both wills and trusts. *In re Amy Veneer Nelson Inter Vivos Trust,* 926 S.W.2d 707, 709 (Mo.App. S.D.1996).

**3.** "Grantors, acting jointly only, expressly reserve the right, at any time and from time to time, to amend or alter this agreement, in whole or in part, by duly executed written instrument delivered to the Trustee."

death of one settlor in that the trust stated "[i]t should not be in the power of either party after the death of the other...." 2 A.2d at 826. Our case is different. The current trust explicitly allowed the surviving grantor to revoke the trust acting individually. Therefore, the predeceased grantor's wishes could easily be disregarded through the revocation of the original trust and creation of a new trust, funded by the same corpus. The deceased grantor could not reasonably expect the original disposition of her property to be protected when the other grantor had the right to revoke the trust at any time.

■ After reviewing the entire trust, we hold the phrase "acting jointly only" contemplated pre-death amendments only. Eugene's amendment, in part making the trust irrevocable, was effective. Generally, where a trust provides a power to revoke, there is a power to amend. RE- STATEMENT (THIRD) OF TRUSTS § 63 cmt. (g) (2003). "A power to revoke includes impliedly a power to alter or amend.... It is useless, in the usual case, to require the settlor who is the holder of the power of revocation to terminate the entire trust and create a new trust on modified terms." Mary F. Radford, George Gleason Bogert & George Taylor Bogert, The Law of Trusts and Trustees, *Revises*, § 1001, pp. 309–10 (3d ed.2006).

In this case, it would serve no substantive purpose to permit revocation and creation of a new trust with the same corpus but not allow amendment of the original trust. We decline to interpret the trust in a manner that compels a useless act. Because, the trust is silent on amendment after the death of one of the grantors and allows revocation, we interpret the trust to permit amendment after the death of one of the grantors.

**Conclusion**

Eugene's amendment of the trust on January 15, 1999, in part making the trust irrevocable, was valid. His subsequent attempt to revoke the trust was a nullity. Accordingly, we affirm the trial court's judgment and the distribution of the sale proceeds to the plaintiffs.

EDWIN H. SMITH and NEWTON, JJ., concur.