2008-NMCA-005

175 P.3d 937

**In the Matter of the Cable Family Trust, dated June 10, 1987, as amended.**

**Gary D. CABLE, Beneficiary–Appellant,**

v.

**WELLS FARGO BANK NEW MEXICO, N.A., Petitioner–Appellee.**

No. 26,357.

Court of Appeals of New Mexico.

Oct. 12, 2007.

Certiorari Granted, No. 30,787, March 10, 2008.

Tucker Law Firm, P.C., Steven L. Tucker, Santa Fe, NM, for Appellant.

Popejoy & MacKenzie P.C., Gregory W. MacKenzie, Thomas L. Popejoy, Albuquerque, NM, for Appellee.

## OPINION

ROBINSON, Judge.

{1} This case requires us to determine whether two Grantors of a Trust intended to allow the surviving Grantor to amend the terms of the Trust after the death of the other Grantor. We conclude that the power to amend should be implied based on the Trust provision which gives the surviving Grantor an unrestricted right to withdraw all assets from the Trust estate. We, therefore, affirm the district court.

## I. BACKGROUND

{2} Lowell and Martha Cable, husband and wife, executed the Cable Family Trust (Trust) in 1987, naming themselves as co-trustees. That same year, they executed a document entitled "FURTHER TERMS AND PROVISIONS" modifying the Trust. Section 2.1 of the Trust provides that, while both Grantors were alive, the Trust funds were to be used "as both Grantors may direct Trustee from time to time." Section 2.4 of the Trust provides that, upon the death of either Lowell or Martha Cable,

> [t]he Trustee shall pay, upon the written request of the surviving Grantor, the net income of the Trust to the surviving Grantor during his or her lifetime in convenient installments.... The Trustee may also pay to or apply for the surviving Grantor's benefit such amounts of principal as Trustee may deem necessary or advisable for his or her care, maintenance and support in reasonable comfort. Trustee shall also pay over to the surviving Grantor such amount or amounts of principal as the surviving Grantor may demand in writing delivered to Trustee.

Upon the death of the surviving Grantor, the remainder of the estate was to be divided equally among the Cables' three children, Gary Cable, Larrie Cable, and Shirley Trevino. Only one section of the agreement expressly discusses Lowell and Martha's power to amend or revoke the Trust. Section 9.1 states that "Grantors reserve the right at any time or times to amend or revoke this instrument and the trusts hereunder, in whole or in part, by an instrument or instruments in writing, signed by Grantors and delivered in Grantors' lifetimes to Trustee."

{3} Martha died on April 3, 1988. After Martha's death, Lowell executed two addenda purporting to amend the Trust. The first of these, executed in December 1988, named Gary Cable as the successor trustee. The second, executed in 1994 after Lowell remarried, changed the successor trustee from Gary to a financial institution, and provided that the Trust estate remaining after Lowell's death was to be distributed as set out in an attached schedule that Lowell reserved

the right to amend at any time. In January 1999, Lowell drafted a distribution schedule that differed significantly from that in the original Trust document. Rather than dividing any assets remaining after Lowell's death equally among his three children, the schedule provided that 39% of the remaining assets would be divided among certain non-profit organizations, two friends, and his grandchildren. As for his children, Shirley was to receive 24.4%, and Gary and Larrie were each to receive 18.3%.

{4} After Lowell died, Wells Fargo Bank New Mexico, N.A. (Wells Fargo), as the successor trustee of the estate, filed a petition in the district court for approval of the proposed distribution of the Trust estate. Wells Fargo took the position that the addendum was valid, and requested that the court approve the distribution of the Trust estate as set out in the 1999 schedule. Gary filed a memorandum in opposition to Wells Fargo's petition and a motion for declaratory judgment, arguing that Section 9.1 of the Trust indicated that the Trust could not be amended after Martha's death, and that, as a result, the 1999 schedule of distribution was invalid. Wells Fargo filed a motion for summary judgment and attached an affidavit from Wayne Marsh, the attorney who drafted the initial Trust document. Marsh stated that Section 9.1 used language he routinely employed in trust agreements, and that his practice was to explain to his clients that the section confers on the surviving spouse the power to amend the trust agreement after the death of the other spouse.

{5} The district court treated the parties' motions as cross-motions for summary judgment. After reviewing the Trust agreement as a whole and Marsh's affidavit, the district court determined that the intent of the Grantors was to permit the surviving spouse to amend the trust after the death of the other spouse. The district court therefore granted summary judgment in favor of Wells Fargo, and ordered that the Trust estate be distributed in accordance with the 1999 schedule. Gary appeals.

## II. DISCUSSION

{6} Summary judgment is appropriate when "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Rule 1–056(C) NMRA. Where, as here, the appellant does not claim that material facts are in dispute that must be resolved at trial, we review the grant of summary judgment de novo. *See Moriarty Mun. Sch. Dist. v. Thunder Mountain Water Co.*, 2007–NMSC–031, ¶ 6, 141 N.M. 824, 161 P.3d 869.

### A. Estoppel

{7} As a threshold matter, Wells Fargo claims that Gary is estopped from arguing that Lowell could not amend the Trust after Martha's death. Wells Fargo bases its argument on the fact that, at a previous stage in this litigation, Gary relied on one of the amendments to assert that he, rather than Wells Fargo, was the successor trustee. Citing George Gleason Bogert & George Taylor Bogert, *The Law of Trusts and Trustees*, § 581 (2d ed.1980), Wells Fargo asserts that a trustee has a duty not to attack the trust he is charged with administering. However, Gary has abandoned his argument that he is the rightful trustee, and we see nothing in the principle cited by Wells Fargo that would impose a duty on a non-trustee to refrain from attacking either the validity of the Trust, or one of its amendments.

### B. Surviving Grantor's Right to Amend the Trust

{8} In interpreting the meaning of Lowell and Martha's Trust agreement, this Court "must attempt to ascertain and give effect to the [grantor's] intent." *In re Estate of Deupree*, 2002–NMCA–097, ¶ 10, 132 N.M. 701, 54 P.3d 542 (internal quotation marks and citation omitted). Their intent should be determined by the text as a whole, without undue emphasis on any particular clause of the agreement.

> The text of a donative document must be read in its entirety. Each portion, whether it be a word, phrase, clause, sentence, paragraph, article, or some other portion, is connected to a whole. The donor is presumed to intend that the various portions complement or modify each other. The case may arise, for instance, in which

two portions, read in isolation, appear contradictory. But, when construction of the document as a consistent whole would be facilitated by reading one portion as modifying the other or reading both as mutually modifying each other, that construction prevails.

Restatement (Third) of Property: Wills and Other Donative Transfers § 10.2 cmt. b (2003) (cited by Restatement (Third) of Trusts § 4 cmts. a–d (2003)). In order to determine whether the trust instrument is ambiguous, a court may consider extrinsic evidence. *See, e.g., In re Deupree,* 2002–NMCA–097, ¶ 10 (relying on the rules of contract interpretation described in *Mark V, Inc. v. Mellekas,* 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993)); *In re Estate of Frietze,* 1998–NMCA–145, ¶ 10, 126 N.M. 16, 966 P.2d 183 (same); *cf.* Restatement (Third) of Trusts § 4 cmts. a–d (stating that a court may consider extrinsic evidence in order to discern the grantors' intent). We hold that a review of Marsh's affidavit and the Trust as a whole indicates that the Trust instrument is unambiguous as to Lowell and Martha's intent to permit the surviving Grantor to amend the Trust after the death of the other Grantor. Gary argues that the language of Section 9.1, providing that "Grantors reserve the right at any time or times to amend or revoke this instrument and the trusts hereunder, in whole or in part, by an instrument or instruments in writing, signed by Grantors and delivered in Grantors' lifetimes to Trustee," expressed Lowell and Martha's understanding that the Trust would be amended only with the agreement of both Grantors while they were both alive. We agree that if we were to read Section 9.1 in isolation, that section would unambiguously indicate that the surviving Grantor could not amend the Trust because the paragraph indicates that joint action is required. *See, e.g., L'Argent v. Barnett Bank, N.A.,* 730 So.2d 395, 396–97 (Fla.Dist.Ct.App.1999) (holding that grantors did not intend to permit the surviving grantor to amend the trust where the trust stated that during "the life of the Settlors, this trust may be amended, altered, revoked, or terminated, in whole or in part ... by an instrument in writing signed by the Settlors and delivered to the trustees" (internal quotation

marks omitted)); *Williams v. Springfield Marine Bank,* 131 Ill.App.3d 417, 86 Ill.Dec. 743, 475 N.E.2d 1122, 1124 (1985) (holding that grantors did not intend to permit the surviving grantor to amend the trust where the trust stated that "[t]he Settlors may at any time or times during their lifetime by instrument in writing delivered to the trustee amend or revoke this agreement in whole or in part" (internal quotation marks omitted)); *In re Temple,* 2005 WL 1880375, at **1, 3 (Mich.Ct.App.2005) (holding that grantors did not intend to permit the surviving grantor to amend the trust where the trust stated that "[w]e reserve the right to amend or revoke this Agreement ... by a writing signed by us ... or on our behalf and delivered to Trustee during our lives"); *but see Day v. Rasmussen,* 177 N.C.App. 759, 629 S.E.2d 912, 915–16 (2006) (holding that similar language was ambiguous, but that extrinsic evidence in the form of an affidavit of the attorney who drafted the trust indicated that the language was intended to reserve to the surviving grantor the right to amend). However, we cannot read Section 9.1 in isolation from the remaining terms of the agreement.

{9} Wells Fargo urges this Court to apply a boilerplate clause, allowing singular terms to be read as plural, and plural terms to be read as singular, in order to dispose of this issue. Relying on *Roberts v. Sarros,* 920 So.2d 193 (Fla.Dist.Ct.App.2006), Wells Fargo claims that the singular/plural clause permits this Court to interpret Section 9.1 to mean that a single Grantor had the power to amend the Trust after the death of the other Grantor, i.e., that "Grantor[ ] reserve[s] the right at any time or times to amend or revoke this instrument and the trusts hereunder, in whole or in part, by an instrument or instruments in writing, signed by Grantor[ ] and delivered in Grantor['s] lifetime[ ] to Trustee."

{10} In *Roberts,* the Florida District Court of Appeals construed a trust document containing a clause that provided that the trust "is subject to revocation, change or amendment, in writing, by the Grantors from time to time." *Id.* at 194 (internal quotation marks omitted). The court determined that this language permitted the surviving grant-

or to amend the trust after the death of the other because the instrument contained a clause providing that "the singular and plural [may] be construed interchangeably" such that it could be read to permit a single grantor to amend. *Id.* at 196.

{11} We are not persuaded by *Roberts'* reasoning. The clause requiring amendments to be "signed by Grantors and delivered in Grantors' lifetimes to Trustee" cannot be read to authorize a single grantor to amend the Trust. Otherwise, either Lowell or Martha could have unilaterally altered the Trust while both Grantors were living. This cannot be what was intended when all of the Cables' property was community property, and when Section 2.1 clearly indicates that while both trustees are alive, the Trust is to be managed "as *both* Grantors may direct Trustee from time to time." (Emphasis added.) *See, e.g., Horwitz v. Horwitz,* 3 Mass. App.Ct. 753, 327 N.E.2d 918, 919–20 (1975) (holding that husband could not unilaterally amend trust without wife's consent while wife was alive, even though the trust agreement contained both a clause permitting the grantors to amend, and a clause stating that the singular was deemed to include the plural and vice versa); *see also* NMSA 1978, § 46A–6–602(B)(1) (2003) (stating that if a revocable trust is created or funded by more than one grantor, "to the extent the trust consists of community property, the trust may be revoked by either spouse acting alone *but may be amended only by joint action of both spouses* " (emphasis added)).

{12} In order to construe Section 9.1 to permit the surviving Grantor to amend the Trust after the death of the other, as Wells Fargo urges, but not to permit a single Grantor to amend the Trust without the consent and signature of the other while both Grantors are alive, as would be inconsistent with the joint nature of the Trust, we would have to do more than substitute the singular for the plural. We would have to specifically add language indicating that a single Grantor could amend the Trust without the consent of the other Grantor only if the other Grantor was no longer living. We decline to do so. *See In re Estate of Padilla,* 97 N.M. 508, 513, 641 P.2d 539, 544 (Ct.App.1982) (stating that

this Court is "not to add words to those in the Will to contradict its language, or to take words away from those used in the Will, even though the court may believe that the actual disposition of decedent's property which results through changing circumstances, was not contemplated by him"). Here, the language of the Trust clearly indicates that both Grantors must jointly agree to any amendment.

{13} However, Section 9.1 is not the only provision of the Trust relevant to the question of whether Lowell, as the surviving Grantor, had the right to amend the Trust after Martha's death. The Trust granted two broad powers to the surviving Grantor over the entire Trust estate. These powers are described in Section 2.4, which provides that the "Trustee shall also pay over to the surviving Grantor such amount or amounts of principal as the surviving Grantor may demand in writing delivered to Trustee" and, in Section 2.5.b, which permits the surviving Grantor to dispose of the entire Trust estate in such manner as the surviving Grantor shall direct in his or her last will, so long as the surviving Grantor specifically refers in his will to his intent to exercise his right under the Trust. Because we agree with Wells Fargo that Section 2.4 impliedly grants the surviving Grantor the right to amend the Trust, we do not address the argument that Section 2.5.b also grants the power to amend.

{14} Section 2.4 permits the surviving Grantor to withdraw all the assets from the Trust without restriction, thereby permitting the surviving Grantor to singlehandedly revoke the entire Trust by simply withdrawing the funds. *See Suzan Tantleff Trusts v. FDIC,* 938 F.Supp. 14, 17–19 (D.D.C.1996) (holding that the power to withdraw all trust assets necessarily implies a power to revoke the trust). Although the Trust is silent as to whether this power of the surviving Grantor to withdraw all the assets and thereby revoke the Trust also includes the power to amend the Trust, we hold that such a power is implied. *See* Restatement (Third) of Trusts § 63 cmt. c (stating that where a trust is silent as to whether it is subject to revocation or amendment, a court will apply a rebuttable presumption that the trust is re-

vocable and amendable if the grantor has retained a power to withdraw the assets).

{15} In *Kimberlin v. Dull,* 218 S.W.3d 613 (Mo.Ct.App.2007), the court faced a similar question. There, the trust agreement between a husband and wife stated that "Grantors, both individually and jointly, expressly reserve the right, at any time ... to revoke this Agreement," but that the right to amend could be exercised by "Grantors, *acting jointly only.*" *Id.* at 614 (internal quotation marks omitted). After the wife died, the husband executed an amendment to the trust. Since the husband had expressly reserved the right to individually revoke the trust entirely, and since under that provision he could have revoked the trust and created a new trust with the assets, the court concluded that individual power to revoke implied a right to achieve the same result through an amendment. *Id.* at 617. To give meaning to the provision requiring joint action in order to amend the trust, the court held that the clause requiring joint action was only intended to limit the grantors' ability to amend the trust while both grantors were alive. *Id.*

{16} We agree with the Missouri Court of Appeals that "it would serve no substantive purpose to permit revocation and creation of a new trust with the same corpus but not allow amendment of the original trust." *Id.* Therefore, "[b]ecause[ ] the trust is silent on amendment after the death of one of the grantors and allows revocation [by the surviving grantor], we interpret the trust to permit amendment after the death of one of the grantors." *Id.*

## III. CONCLUSION

{17} The provision of the Trust that expressly reserved to the surviving Grantor the power to withdraw all assets from the Trust without restriction impliedly reserved to the surviving Grantor the power to revoke and amend the Trust. As a consequence, we affirm the district court.

{18} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and RODERICK T. KENNEDY, Judges.